## UNITED STATES *v.* THOMPSON.

*(Circuit Court, D. Oregon. June 27, 1887.)*

1. ACCOMPLICE—WHO IS—SUBORNATION OF PERJURY.
   The person solicited to commit perjury is not an accomplice in the crime of subornation committed by the person who suborned him; and the fact that he committed the perjury does not prevent the jury from convicting the suborner of the solicitation on his testimony.

2. SUBORNATION OF PERJURY—INDICTMENT.
   The defendant was indicted for procuring S. to commit perjury in taking an oath in support of an application for land under the timber-culture act, and it was alleged in the indictment that the defendant knew that S. did not make the application for his own use and benefit, but for that of the defendant, and did not intend to cultivate the land, or anywise comply with said act. *Held,* that such allegation was the legal equivalent of the allegation that the defendant knew that S. would and did swear willfully false in taking said oath, and would and did thereby commit perjury, at least on a motion in arrest of judgment, after a verdict of guilty.

*(Syllabus by the Court.)*

Indictment for Subornation of Perjury.

*Lewis L. McArthur,* for the United States.

*W. D. Fenton*, for defendant.

DEADY, J.   Section 5392 of the Revised Statutes defines the crime of perjury as a willful statement, made by a person duly sworn to tell the truth of any material matter, which he does not believe; and the following one (5393) enacts: "Every person who procures another to commit any perjury is guilty of subornation of perjury, and punishable as in the preceding section prescribed."

· On April 5th the defendant was indicted and on May 26th convicted of the latter crime, and now moves for a new trial and in arrest of judgment.   Briefly, the indictment states that on August 26, 1886, the defendant solicited one David J. Shepered to make an application under the timber-culture act of June 14, 1878, (20 St. 113,) for that portion of the public lands designated on the survey thereof as the N. E. ¼ of section 2, in township 1 N., of range 20 E. of the Wallamet meridian, situate in The Dalles land district, state of Oregon, and to subscribe and swear to the affidavit required by law in making said application, which said Shepered then and there consented to do; that on August 27th said Shepered, in consequence of said solicitation, did make said timber-culture application at the proper land-office, and subscribe and swear to the affidavit required by law, in which he stated, among other things, that "this filing and entry is made for the cultivation of timber, and for my own exclusive use and benefit; that I have made this application in good faith, and not for the purpose of speculation, or directly or indirectly for the use or benefit of any other person or persons whomsoever; that I intend to hold and cultivate the land, and to fully comply with the provisions of this said act;" whereas, in truth and in fact, the said Shepered, as he then and there well knew, did not make said application in good faith, nor for his own exclusive use and benefit, but for that of the defendant, and did not intend to hold and cultivate said land, or comply with the provisions of the timber-culture act; and whereas, in truth and in fact, the defendant, when he solicited said Shepered to falsely swear as aforesaid, and when he did so falsely swear, well knew that said Shepered did not make said application in · good faith, nor for his own exclusive use and benefit, but for that of the defendant; and did not intend to hold and cultivate said land, or comply with any of the provisions of the timber-culture act; and so the defendant did, in manner and form aforesaid, suborn and procure said Shepered to commit perjury, contrary to the statute, etc.

The motion for a new trial is based on the following grounds:   (1) That Shepered is an accomplice and perjurer, and the only witness to the facts necessary to a conviction; and (2) that the evidence in the case tends to show that Shepered did not commit perjury in making the affidavit in question, because he believed that the statements therein were true; and in arrest of judgment on the following:   The indictment does not state facts sufficient to constitute a crime, in this: it does not allege that the defendant knew that Shepered knew that the matter contained in said affidavit was false.

The first point is not well taken. Shepered is not technically an accomplice in the crime charged against the defendant; and, if he is, the jury had the power to find the defendant guilty on his uncorroborated testimony. The credibility of his witness belongs to the jury. Whart. Crim. Ev. § 441. But, on the statement of the witness, he has once been guilty of perjury, and that circumstance was proper to be considered by the jury in weighing the evidence; and so they were instructed.

But it is claimed by counsel that this fact brings him within the maxim, *falsus in uno, falsus in omnibus,* in support of which *People* v. *Evans,* 40 N. Y. 5, is cited. I think this maxim has no application to any falsehood spoken by the witness on any other occasion than the one in which his evidence is being considered by the jury. Nor do I think that the weight of modern judicial opinion or legislation favors the doctrine that a false statement presently made by a witness shall have any other or greater effect than to cause him to be distrusted generally, leaving the jury, under proper instructions, to judge of his credibility, and give such weight to his evidence as they think it entitled to. The rule is so expressed in the Code of Civil Procedure, § 835, sub. 3: "A witness false in one part of his testimony is to be distrusted in others." It would be monstrous, as it seems to me, if a falsehood told by a person years before he is called as a witness in a particular case could be invoked to absolutely discredit him on the latter occasion.

Therefore if, all the circumstances considered, the jury are satisfied, beyond a reasonable doubt, of the guilt of the accused, from the evidence of an uncorroborated accomplice, or that of a witness who has committed the perjury which he is charged with procuring, they may and ought so to find, and the court may not on that account interfere with the verdict. But Shepered was corroborated at almost every point in his testimony, and particularly by the defendant himself. From the testimony of Shepered it appears that he is a young man without any special calling, whose home is at Salem. In the summer of 1886 he was living from hand to mouth, knocking about in eastern Oregon, working occasionally as a sheep-herder and hostler. On his way home, while passing through The Dalles, he testifies that the defendant came to the tavern where he was stopping, and accosted him without an introduction, asking where he was from, and, on receiving an answer, said he had seen some land that he wanted; that he wanted to get seven or eight persons to enter it, and give him a power of attorney to control it; that there was a party coming out from the east in six months, and he wanted to get control of the land so they could hold it in the name of the persons who entered it; and that there was nothing wrong about it. The witness having consented, he says he went to the defendant's room the next day, where he signed a paper which he understood to be the power of attorney suggested, and afterwards went to the land-office in The Dalles, in charge of a third person, to whom the defendant gave $14 to pay the expenses of the entry, which was handed to the witness at the land-office, where he made the application and affidavit in question, and paid said expenses. Of the sum of $14, Shepered retained $1, and

gave the land-office receipt for remainder to the defendant, who then gave him another dollar for himself. Shepered also testified that when defendant sent the man to the land-office with him he said he had been there so often himself he did not want to go again; that he (Shepered) did not intend to cultivate the land, and that he took it for the defendant, which the latter well knew. This transaction took place on August 26 and 27, 1886.

The register of the land-office testified that the defendant was at the office frequently during the ten days or two weeks just prior to the time this application was made, inquiring for vacant prairie lands, and that on his request he was furnished with some plats of the public lands for examination; that on August 26, 1886, he brought a man named Ryan to the land-office, and gave him $14 to make a timber-culture entry with, which he did; and that Shepered made the application in question, and affidavit in support thereof, on August 27th, in company with another person not the defendant.

The defendant testified that he came to Oregon from Illinois in July, 1886, and stopped at The Dalles, where he had a brother, who is a locomotive engineer; that he was raised on a farm, and had worked at the printing trade, and kept school. He says he met Shepered and others at The Dalles, and talked with them about taking land; that he got three pieces from the land-office, and got Shepered and Ryan to enter two of them, he paying the expense, and giving them two dollars apiece; that they first signed a paper, by which he was to take care of and control the land, and they were to pay him his advances for entry and subsequent cultivation under the timber-culture act, with 10 per centum interest; that he knew the nature of the oath that Shepered must and did take in support of the application, and that he told him there was nothing wrong about it.

These parties—the defendant, Shepered, and Ryan—were soon after arrested on a charge of conspiracy to defraud the United States out of the land included in these entries, under section 5440 of the Revised Statutes, for which they were subsequently indicted. Demurrers being sustained to the indictment, (U. S. v. Thompson, 29 Fed. Rep. 86, 89,) they were held to bail, and the defendant was subsequently indicted for subornation of perjury in procuring both Shepered and Ryan to make these entries. Ryan has since escaped from jail. On the witness stand, the defendant, being asked on cross-examination to produce the writing between himself and Shepered and Ryan, answered that, when they were arrested at The Dalles, Ryan said "he thought the agreement was not legal, and I put it in the stove." He also admitted that he had no means, and that the money used in making these entries he took out of his brother's trunk during the latter's absence.

As to the second ground of the motion, but little need be said. The question involved in it was one of fact for the jury, and they have found that Shepered did commit perjury. It is true that Shepered was made to say, on cross-examination, that he "did not think he swore falsely" when he took the oath, because the defendant told him "it was all right."

But this kind of a statement ought to have no weight against his specific statements on the examination in chief that he did not intend to cultivate the land, that he did not take it for his own use and benefit, but for that of the defendant. Added to these are the facts admitted by both the defendant and Shepered, that the latter made the application at the solicitation and with the money of the former, after executing a writing which there is every reason to believe gave him the right to control and use the land as his own, as far as the law would allow, or it could be evaded.

On the evidence of Shepered, which is corroborated by that of the defendant at every turn, it is clear that the former committed perjury; that is, he made a material statement in the affidavit that he subscribed which he did not believe and, more, which he could not believe, and which he now testifies he did not believe, and was not true. And the defendant, who knew Shepered did not intend to cultivate the land, or take it for his own use or benefit, and who had procured him to take it for his benefit, well knew that Shepered would and did commit perjury in taking that oath. Indeed, the very fact of the spoliation or destruction by the defendant, as soon as he was arrested, of the private writing given him by Shepered and Ryan, betrays a guilty knowledge of an unlawful act on his part, and stamps the transaction to which it related as illegal.

In support of the motion in arrest of judgment, counsel cites *U. S.* v. *Evans,* 19 Fed. Rep. 912; *U. S.* v. *Dennee,* 3 Woods, 39; and *Com.* v. *Douglass,* 5 Metc. 244. The former two cases appear to have been decided on the authority of the latter. But that case, while it holds that subornation of perjury is not committed when it does not appear that the party procuring the witness to make the false statements must have known or believed that they were willfully false as well as false in fact, it is silent on the subject of what averments are necessary in the indictment. The court says that "if he [the defendant] did not know or believe that the witness intended to commit the crime of perjury he could not be guilty of the crime of suborning her." On the evidence in this case, the defendant must have known that Shepered was going to commit the crime of perjury in pursuance of his solicitation, and the only question is, are the allegations of the indictment sufficient to support the verdict?

It is alleged in the indictment that both the defendant and Shepered knew the oath of the latter would be and was false in fact, but it is not alleged in so many words that the defendant knew or believed that Shepered willfully took the oath knowing it to be false, and thereby committed perjury. In *Com.* v. *Douglass, supra,* the allegation in the indictment, which the facts proven were held insufficient to sustain, is incidentally stated in this language: "The defendant suborned the said Fanny Crossman to commit perjury." In my judgment, this charge covers the whole ground, and by a necessary implication includes all the elements of the crime of subornation of perjury. It may be defective, on demurrer, for not stating the circumstances of the subornation in detail,

including the fact that the defendant knew or believed that the person solicited would willfully swear false, as alleged, so that he might be fully "informed of the nature and cause of the accusation against" him. But an allegation that A. procured B. to commit perjury by willfully swearing that A. paid C. $100 on a certain occasion, which statement neither A. nor B. believed to be true, is comprehensive enough to admit, on the trial, the proof of all the details constituting the crime of subornation of perjury, and is therefore good after verdict. And the evidence necessary to support the indictment in such case would include proof of the fact that A. knew or believed that the person solicited would and did willfully swear falsely. But the indictment in this case goes further than this. For it is distinctly alleged that the defendant, when he solicited Shepered to take this false oath, and also when he did take it, knew that he did not make the application in good faith, nor for his own exclusive use and benefit, but for that of the defendant, and did not intend to cultivate the land, or comply with any of the provisions of the timber-culture act.

Nor, if the defendant had this knowledge, or any particular of it, concerning the real purpose and intent of Shepered when he consented to and did take this oath, he not only had reason to believe but knew that in taking it he committed perjury. This allegation is the legal equivalent of the statement that counsel for the defendant insists should be in the indictment. The defendant knew that Shepered knew that the matter contained in the affidavit is false. But, assuming that there is no equivalent allegation in the indictment, the omission complained of is merely a defect in the statement of a material averment, which the court cannot fail to see must have been fully proven on the trial, or the verdict of guilty could not have been found, and therefore there is no cause for the arrest of judgment. Whart. Crim. Pl. & Pr. § 760a.

On the argument a new trial was also asked on the ground of further evidence contained in an affidavit then filed of one of the counsel for the defendant, who says that on account of a prior engagement he was not able to be present at the trial, concerning a conversation or conversations he had with Shepered on the subject of this oath. They are to the effect that he did not commit perjury in taking the oath, and that he made the application in good faith. With the consent of the district attorney, the affidavit was submitted with the motion for new trial. This evidence is not newly discovered. It was known before the trial. But, waiving that, it is not calculated to change the result. It consists of two general conclusions, stated by the witness probably in answer to interrogatories that suggested them,—the one that he did not commit perjury; the other, which is included in the first, that he acted in good faith. They are both utterly inconsistent with and contradicted by the specific facts testified to by him concerning his purpose and intent in making the application and taking the oath. The undoubted circumstances of the transaction, show, beyond the power of contradiction, that he did commit perjury; that he swore to what he did not believe and did not intend to perform. But the defendant had the benefit of this

statement on the trial. For, as has been said on the cross-examination, Shepered was induced to say that "he did not think he swore falsely" because the defendant said "it was all right." But, on the facts admitted by him, the jury were of a different opinion; and the question was for them to decide, and not Shepered. As well might the famous burglar, Jack Sheppard, excuse himself for house-breaking, on the plea that he did not think it was burglary because the receiver of the stolen goods said "it was all right."

The motion is denied, and the defendant is directed to appear for sentence.