# Court of Appeals.

## *April*, 1888.

## PEOPLE *v.* O'NEILL.

(Affirming 5 *N. Y. Crim. Rep.* 302.)

N. Y. CHARTER OF 1873.—LAWS 1873, CH. 33, § 100.—CON-
SOLIDATION ACT, §§ 58–2,143.—CHALLENGES TO JURORS.
—BRIBERY OF ALDERMEN.—PERJURED WITNESS.—
CORROBORATION.—EVIDENCE.—PENAL CODE, §§
72, 714.—CODE CRIM. PRO. §§ 376, 399.

The bribery section of the charter of 1873 (L. 1873, ch. 33, § 100) was
    repealed by the taking effect on December 1, 1882, of the Penal
    Code, and the offense of bribery, committed thereafter by a mem-
    ber of the common council of New York, is punishable under
    section 72 of that Code.

Section 72 of the Penal Code, in relation to bribery, governs future
    cases only ; and, *it seems*, that had it purported to be applicable
    to past offences, it would be void as to the latter only.   The pro-
    vision of the Consolidation Act (L. 1882, ch. 410, § 2143),—de-
    claring that the Penal Code is to have the same effect as if
    passed after the Consolidation Act,—is not in violation of section
    16, article 3 of the Constitution, forbidding the passage of a pri-
    vate bill embracing more more than one subject and which must
    be expressed in the title.

In a case where the prosecution intend to partly prove their case by
    the testimony of an accomplice who had turned State's evidence,
    it is proper to allow the district attorney to ask persons called
    to act as jurors, whether they have such a prejudice against
    accomplices so testifying, as would prevent ther giving to their
    evidence such weight as it would be entitled to in law.

Where there is no exception by defendant to the ruling of the trial
    judge upon a challenge to a juror holding him to be competent,
    that juror must be considered as sitting with the consent of
    defendant.

It having been proved without objection that a witness had visited a
    place where a part of the corrupt combination in which defendant

was engaged, was alleged to have been contrived, it is not error to overrule an objection to the question whether he had been to that place frequently.

After proof that a suit had been settled, and a witness had testified that he negotiated the settlement with the plaintiff or his attorney, it is not error to allow him to be asked with whom personally he settled that suit.

Upon the trial of defendant, an alderman, for agreeing to accept a bribe to influence his official action in granting a franchise to a street railroad, evidence of meetings at the house of one of the corrupt conspirators, and of meetings of the Board of Aldermen after the passage of the resolution of said board in reference to which the crime was charged in which the defendant participated,—*Held*, admissible against defendant as throwing light on his prior conduct, to confirm the testimony of the accomplices who testified against defendant, and as showing that the defendant's vote upon the resolution granting the franchise was in pursuance of the corrupt agreement charged in the indictment.

Where defendant had been permitted to testify as to his reasons for voting in favor of the granting of a certain franchise in regard to which vote it was charged he had agreed to take a bribe, it is not error to overrule the question to defendant as to his object and purpose in voting against the rescission of that resolution.

The testimony of a person who has committed perjury in the same matter on a prior occasion, is not incompetent, but must be considered by the jury in connection with the other evidence in the case under such prudential instructions as may be given by the court, and subject to the determination of the court having jurisdiction to grant new trials in cases of verdicts against evidence.

A witness who claimed to have seen the defendant going into a house where the meetings of the conspirators were held, failed to recognize him when upon the occasion of the trial she went up with him to the court-room in the elevator. *Held*, that this was properly left to the jury on the question of the witness's credibility.

Appeal by defendant, John O'Neill, from a judgment of the General Term of the Supreme Court, of the First Department, of June 20, 1887, which affirmed a judgment of the Court of Oyer and Terminer, Hon. GEORGE C. BAR-

ᴋᴇᴛᴛ, presiding, of February 11, 1887, entered upon the conviction of defendant of bribery.

In the report of the case at the general term, 5 *N. Y. Crim. Rep.* 302, the facts, indictment, and briefs of counsel have been fully given, and need not be here repeated. In the report of the Sharp case there is given (5 *N. Y. Crim. Rep.* 393–419), a full account of the transactions out of which arose the present prosecution.

*Peter Mitchell* and *Charles W. Brooke,* for defendant, appellant.

*John R. Fellows* (*McKenzie Semple,* assistant), for the people, respondents.

ANDREWS, J.—In the case of People *v.* Jaehne (103 *N. Y.* 182; 4 *N. Y. Crim. Rep.* 478), it was held that the crime of bribery committed by a member of the Common Council of the city of New York, subsequent to December 1, 1882, was punishable under section 72 of the Penal Code. This construction necessarily involved the conclusion that section 100 of the Charter of 1873, in force prior to December 1, 1882, being the bribery section of the charter, was repealed by the taking effect on that day of the Penal Code, so far as it was in conflict with any of the provisions of section 72. That section increased the punishment for bribery beyond that prescribed by the Charter of 1873 (chap. 335), and could, therefore, only operate upon the crime of bribery committed by a member of the Common Council, after the Penal Code took effect. Section 72 is not retrospective in its terms, and, according to settled principles, is to be construed as prospective only. If a case should arise where the bribery charged was committed while section 100 of the Charter of 1873 was in force, it would be necessary to consider whether such cases were reserved from the operation of the Penal Code. The alternative conclusion would be that the legislature, in repealing section 100 of the charter, by the enactment of the Penal Code, had inad-

vertently omitted to except from the operation of the re-
pealing statute cases of bribery committed by municipal
officers in New York prior to its enactment. It will be
time enough to consider the application and effect of the
Penal Code upon such cases when occasion arises. What-
ever conclusion might be reached on this point, section 72
of the Penal Code was, in no sense, an *ex post facto* law;
It was a law governing future cases only, and even if it
purported to enact a rule applicable to past as well as future
transactions, it would be void as to the former only. The
cases are separable, and it is not the rule that the whole
statute falls because one part is unconstitutional and void,
unless the void part is so interwoven with the valid part
that the parts cannot be separated and the valid part sus-
tained by itself, without defeating the intention of the
legislature.

The difficult question in the Jaehne case was as to the
effect of the Consolidation Act, which took effect March 1,
1883, after the enactment of the Penal Code. The Penal
Code, as was held, repealed section 100 of the Charter of
1873, and section 72 became the law for the punishment of
bribery, as well in the city of New York as elsewhere in
the State. But section 100 was re-enacted as section 58 of
the Consolidation Act. The question was whether the sec-
tion of the Consolidation Act, a later enactment than the
Penal Code, did not restore the definition and punishment
of bribery, as declared originally in section 100 of the
Charter of 1873 and in turn repeal section 72 of the Penal
Code, as applied to the city of New York, as the Penal
Code had repealed the provision in the Charter of 1873.
The court decided that this result was prevented by section
2143 of the Consolidation Act, which declared, in substance,
that the Penal Code, for the purpose of construing the effect
of the two acts, should be deemed the later enactment.
The supposed incongruity of inserting in the Consolidation
Act section 58, and then at the same moment making it sub-
ject to the Penal Code, thereby superseding it, is more ap-
parent than real. The Consolidation Act was primarily de-

signed to bring together the local laws relating to the city of New York, the crimes provisions as well as others, but, to avoid conflict with the Penal Code, the crimes provisions in the Consolidation Act were, in effect, subordinated to the provisions of the Penal Code. It was a precautionary policy, and relieved the authors of the Consolidation Act and the Legislature from the necessity of a careful comparison of the provisions of the two statutes, to ascertain whether they were in any respect in conflict. The suggestion that sec-2143 is in violation of section 16, article 3 of the Constitution is without force. The section is germain to the title of the act, and is not the introduction of a new subject, not within the purview of the act. We perceive no reason in the new suggestions of counsel for changing our conclusion in the Jaehne case on the principal point there considered.

There are many questions which have been presented on the argument here in behalf of the appellant, arising on exceptions on the trial. They have been very fully considered in the able opinion of Judge VAN BRUNT. We concur in the conclusions of the General Term, and shall confine ourselves to a brief reference to some of the questions pressed on our attention. The practice followed in selecting a jury seems to have been that each juror when called was challenged by the district attorney, in general terms, without the assignment of special grounds of challenge, and the juror was thereupon questioned by the district attorney and afterwards by the counsel for the defendant. In the examination by the district attorney, each juror was informed, in substance, that the people proposed to examine as witnesses two members of the Board of Aldermen of 1884, who had turned State's evidence, and who, it was supposed, would testify that they were engaged with the defendant in the transaction out of which the indictment arose, and was then asked, in substance, whether he had such a prejudice against persons so testifying as would prevent his giving their testimony such weight as it might be entitled to in law. The defendant's counsel objected to the question as improper, irrelevant, and immaterial. The court overruled the objec-

tion, and the defendant's counsel excepted, and the juror was permitted to answer. Section 376 of the Code of Criminal Procedure defines as one ground of challenge to a juror, "the existence of a state of mind on the part of the juror in reference to the case, or to either party, as satisfies the court, in the exercise of a sound discretion, that such juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." The range of examination on such a challenge must largely rest in the discretion of the court, and we think it was competent to permit the district attorney to make the assumption stated in his question to the juror, and to follow it by the direct inquiry as to the state of mind in respect to witnesses in the situation of accomplices, with a view of ascertaining whether he would be a fair and unprejudiced juror for the people. This was fairly an examination bearing upon the impartiality of the juror "in reference to the case," within section 376. A somewhat similar question was considered by this court in People *v.* Carpenter (102 *N. Y.*238 ; 4 *N. Y. Crim. Rep.* 177). But we think the record shows that the defendant accepted the jurors to whom the question was put, who participated in the verdict, and consented to their sitting. The court was not called upon to decide the challenge in any case except one, and in that case the defendant's counsel, at the conclusion of the examination, said : "We leave the decision of the challenge with your honor." The court thereupon overruled the challenge. No exception was taken, and the juror took his seat. In all the other cases, at the conclusion of the examination, the juror took his seat without objection, and, apparently, with the acquiescence of both sides. Moreover, when the panel was full, the defendant's counsel objected to the district attorney being permitted to exercise the right of peremptory challenge, on the ground that the jurors "having been permitted to take their seats in the box without objection," the right of peremptory challenge was waived. It is quite clear that the jury selected was satisfactory to the defendant, and that his counsel consented that the persons sworn should act.

In the only case where the court ruled upon the competency of the juror, counsel left it to the court to decide, taking no exception.

The exceptions taken on the trial to the testimony of the witnesses Wait and Alexander were, we think, frivolous. All that was substantial or material in their evidence was proved without objection. Whether Waite visited the office of the Broadway Surface Railroad Company "frequently" during the summer of 1884 was of no importance, in view of the unchallenged evidence of his intimacy and interviews with the officers of the road during the period in question, and his testimony, given without objection, that he had been in the office of the company. The court confined his testimony in respect to Maloney, to what Maloney did in pursuance of the agreement in which the defendant was shown to have participated. This was competent, and if the evidence went beyond this, it is sufficient to say that it was not objected to. The question put to the witness Alexander, "With whom personally, did you negotiate the settlement of the Liddy suit," was after he had testified without objection to the fact that he had negotiated the settlement with the plaintiff or his attorney, and after it had been proven that that suit had been settled. The question objected to was, under all circumstances, unobjectionable. The court properly admitted the evidence of the acts and proceedings of the Board of Aldermen, in which the defendant participated subsequent to August 30, 1884, and the testimony of the witness Metz as to the meetings at McLaughlin's house. They threw light upon the prior conduct of the defendant, and tended to confirm the evidence of the accomplices, and to show that the defendant's vote on the thirtieth of August was in fulfillment of the corrupt agreement charged in the indictment. It was not legal error to overrule the question put to the defendant, as to his object and purpose in voting against the rescission of the grant of August 30, 1883. He was permitted to state the reasons which induced him to vote in favor of granting the franchise, and this was the material point. It would

not have strengtheued his position to have allowed him to show that his subsequent action in voting against the revocation of the grant was innocent also. Presumably, the same motives governed his action in both cases. The refusal of the court to charge that if the jury should find that the witnesses Fullgraff and Duffy had in the testimony before the Senate committee in respect to the same matters, committed willful perjury, the jury should wholly disregard their testimony given on the trial, raises a question, which, prior to the enactment of section 714 of the Penal Code, was open to doubt under the decisions in this State. The cases were fully reviewed in Deering *v.* Metcalf (74 *N. Y.* 501), and the question was again referred to in the recent case of People *v.* Petmecky (99 *N. Y.* 421; 3 *N. Y. Crim. Rep.* 293). Under the Revised Statutes (2 R. S. 681), a person convicted of perjury was not permitted to be a witness in any cause or matter until his convictian was reversed. While this statute was in force there was much reason certainly in the contention that where a witness, by his own confession on the stand, in presence of the jury, admitted that he had willfully perjured himself on a former occasion in respect to the same matter, his testimony ought to be wholly disregarded to the same extent as though his perjury had been judicially established by conviction. But now, by section 714 of the Penal Code, no conviction of crime disqualifies a witness, and the section expressly makes a person convicted of crime, not excepting perjury, a competent witness in any case or proceeding, civil or criminal, but allows the conviction to be proved for the purpose of affecting the weight of his testimony. It would manifestly absurd, in the light of this statute, now to hold that an unconvicted perjurer was an incompetent witness whose evidence could not be considered by the jury, when, under the statute, if he had been convicted, his evidence must be received and weighed by the jury. In view of the present statute, whatever doubts may have heretofore existed, the true rule is that stated by Judge DENIO in Dunn *v.* People

(29 N. Y. 529), and which was followed on the trial of this case, that the testimony of a witness who has committed perjury in the same matter on a prior occasion, whether the perjury is established by a conviction or by his confession, or is found by the jury, "must be considered by the jury in connection with the other evidence, under such prudential instructions as may be given by the court, and subject to the determination of the court having a jurisdiction to grant new trials in cases of verdicts against evidence." The request to charge was, therefore, properly denied.

The point that the testimony of the accomplices Full-graff and Duffy was uncorroborated by "such other evidence as tends to connect the defendant with the commission of the crime," as required by section 399 of the Code of Criminal Procedure, is fully answered by our decision in the Jaehne case. Proof of the *corpus delicti* was, in this case, the same thing as proof of the defendant's connection with the crime. The one could not exist without the other. There was evidence, we think, in the testimony, of the defendant's connection with the transactions under investigation, corroborative of the story of the accomplices. The fact that Katie Metz did not recognize the defendant in the elevator was properly left to the jury upon the question of her credibility, and there was no error in the refusal of the court to charge upon that subject in the language used by the defendant's counsel. There are some other questions, but it is unnecessary specially to refer them.

We find no error in the record, and the judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.

Note.—See the note to People *v*. McQuade, *ante*, p. 39; and also the note to People *v*. Sharp, 5 *N. Y. Crim. Rep.* 495. In *N. Y. Law Journal*, November 27, 1888, is given a complete digest of all the points of law decided in the Aldermen's cases.