## STONE *v.* THE STATE.

1. If an act which constitutes one a technical accessory has by statute been made an independent crime, he thereby becomes a principal in such new offense, and the law applicable to the trial of accessories does not apply.
2. While accessorial in its nature, subornation of perjury has been made an offense separate from perjury.   Hence the suborner is not an accessory to the perjurer, and the former may be tried before a conviction of the latter.
3. The test for determining whether a witness is an accomplice is, " could the witness himself have been indicted for the offense, either as principal or as accessory ? " And, according to this ruling, the suborner is not an accomplice of the perjurer.
4. At common law one could be convicted on the uncorroborated testimony of an accomplice.
5. The practice of the English judges, of advising the jury to acquit in all cases where the sole testimony was that of an accomplice, was never a rule of law. It grew up after May 14, 1776, and was not within the terms of our adopting statute ; nor has it been incorporated in the code as to misdemeanor cases, nor as to felonies, except where the *only* witness to a fact is an accomplice.
6. By statute neither bad character nor conviction of crime renders a witness incompetent ; but his credibility is for the jury, who may found a verdict on the sole testimony of such witness, except in those cases where the code expressly requires corroboration.
7. The rules of evidence are adjusted to the laws of mind, as well as to the laws of the land ; and hence any fact is relevant which, when taken alone or in connection with another fact already in evidence, would warrant the jury in drawing a logical inference with reference to the issue on trial.
8. Evidence as to what the accused said and did in suborning the daughters was relevant on the trial for the subornation of the mother, as showing motive and as part of defendant's scheme to acquit the person accused of murder.
9. Where the court provisionally admits evidence on the promise of the solicitor-general that he will subsequently connect the same and show its relevancy, it is not for the judge, of his own motion, to determine whether such promise has been kept and to exclude the testimony, without a request to that effect by the defendant.
10. The demurrer was rightly overruled ; there was no error in the rulings as to the admission of evidence, nor in the charges or refusals to charge ; and the verdict being sustained by the evidence, the judgment refusing a new trial is affirmed.

Argued July 23, — Decided October 24, 1903.

Indictment for subornation of perjury.     Before Judge Lewis. Greene superior court.     June 1, 1903.

Stone was indicted for suborning Linda Green to commit perjury on the trial of Newsome, charged with the murder of Lula James.     The fact of such subornation was proved by the positive and direct testimony of Linda Green herself, and also by her two

daughters, who, according to the theory of the State, were likewise independently suborned to testify to distinct facts in the trial for murder; and there was evidence that the defendant at night made many visits to the house of the Greens for the purpose of coaching them as to the testimony to be given by them on the trial of Newsome. In his statement the defendant admitted having gone to Linda Green's house at night, and that on the first occasion he talked with her for some time in reference to her testimony before the coroner's jury, and her explanation thereof; though he insisted he had done nothing improper, and had gone only as a friend of Johnson, the half-brother of Newsome. He claimed that on the second occasion he acted solely as an officer to witness affidavits containing the statements of Linda Green and her two daughters. The testimony of a witness, Campbell, in part tended to establish that the testimony of Linda and her two daughters on the trial for murder was false. The jury found the defendant guilty. The exceptions mainly argued here involve the question as to whether Stone was an accessory, and could be tried before the conviction of Linda Green of perjury; whether Linda and her two daughters were accomplices of Stone; and whether he could be convicted on their uncorroborated testimony, especially as they confessed that they had been guilty of perjury in reference to the same facts on the trial for murder. These are the controlling points in the case.

*Samuel H. Sibley, Arnold & Arnold,* and *George A. Anderson,* for plaintiff in error.

*J. E. Pottle, solicitor-general,* and *E. W. Butler,* contra.

LAMAR, J. (after stating the foregoing facts.) The crime of subornation of perjury is usually committed in secret, by word of mouth, without leaving any of the physical signs affording circumstantial evidence by which other offenses are so often established. Hence the books contain comparatively few cases on the subject; and while we have had from both sides arguments of marked ability, we find little direct authority on the only question orally argued, as to whether the perjurer is the accessory and accomplice of the suborner.

1. The defendant demurred to the indictment, on the ground that a suborner is the accessory before the fact to the crime of perjury, and therefore he could not be put on trial until it was charged

that Linda Green, the alleged perjurer, had been convicted, or shown to be dead, or otherwise was within the exceptions laid down in the Penal Code, § 49. The demurrer was properly overruled; for, while an accessory can not usually be tried until after the conviction of the principal, there is nothing to prevent the indictment of the principal and accessory at the same term, by the same grand jury and even in the same bill. The approved forms of indictment for subornation omit any reference to the prior conviction of the perjurer. Bishop's Directions & Forms (2d ed.), § 968. But the accused raises the same questions by assigning as error that the court failed to direct a verdict when at the close of the testimony it appeared that Linda Green had not been found guilty.

2. In perjury and subornation of perjury the act of the two offenders is concurrent, parallel, and closely related in point of time and conduct. The two crimes both culminate in the delivery of false testimony. Still the offenses are dual, each having in it elements not common to the other. There is sufficient inherent difference between the two to warrant the lawmaking power in separating the act into its component parts, making that of the suborner a new and independent offense, punishable with greater or less severity than that inflicted on the perjurer. The act of the suborner may be accessorial in its nature; and as it is necessary to prove perjury as well as subornation, it may often be best to try the perjurer first. But just as principals in the second degree, formerly called accessories at the fact, may now be tried before the principal in the first degree (*Williams* v. *State*, 69 *Ga.* 297), so the General Assembly can provide that one theretofore even a technical accessory is to be treated as principal, and under such a statute he is to be indicted and tried as such. The tendency of modern legislation is all in this direction, so as to do away with the distinction under which the guilt of the accessory was regarded as derivative and dependent. Many statutes now provide that each shall be guilty of a substantive and independent offense. 1 Whart. Cr. L. (10th ed.) § 237. Some expressly provide that what was formerly the accessory may be tried before the principal, and the same result follows, even without such provision, when the offense of each is made separate and distinct. Thus, where a statute made aiding, abetting, or procuring a crime to be committed a sub-

stantive offense, it is not necessary that the principal should be convicted before the accessory can be tried, although nothing was said in the act as to when the accessory could be tried.    Noland *v.* State, 19 Ohio, 131, citing Com. *v.* Andrews, 3 Mass. 126; Brown *v.* State, 18 Ohio St. 496 (6); Goins *v.* State, 27 N. E. 478 (3). When, therefore, the Penal Code (§§ 256, 257) defines perjury, and provides a punishment of from four to ten years in the penitentiary, and in separate sections (261 and 262) defines the independent crime of subornation of perjury, with the different punishment of from three to ten years, we have, in effect, a legislative declaration that there are two crimes; that instead of having one principal and one accessory, there are two principals; that the suborner and the perjurer are alike to be treated, tried, and punished as principals; that each may be separately prosecuted for his independent crime; and that the rule requiring the prior conviction of a principal before an accessory can be convicted (Penal Code, § 49) has no application.

Nor is Com. *v.* Smith, 11 Allen, 243, relied on by the accused, an authority opposed to the conclusion hereinbefore stated.    There the letters which procured the false testimony were written by the defendant to the wife of the witness, who handed them to her husband, and thereafter Smith was indicted for subornation.    He insisted that he was only accessory to the subornation which the wife had procured.    The court held that Smith procured the wife to procure her husband to commit perjury; that the crime of subornation is in its *nature* that of an accessory before the fact to the perjury; that whoever procures a felony, though it be by the intervention of a third person, is accessory before the fact; that the accessory is a felon, though his felony is different in its kind from that of the principal; that he who procures a felony to be done is a felon.    But it thereupon proceeded to say: " We can not see that the application of these principles is changed when the crime of the accessory before the fact is made by statute a substantive felony.    The object of making it a substantive felony may be either to provide a distinct or milder punishment upon conviction, or to authorize the indictment and conviction of the accessory where the principal has not been convicted."    So far as we can learn from the report the suborner was tried before the alleged perjurer.    So too, apparently, in Evans *v.* People, 40 N. Y. 2; Bab-

cock v. U. S., 34 Fed. 873.    That the suborner is not, under our law, treated as the accessory of the perjurer is further evident. from the fact that they are punished differently, while under the code accessories before the fact are punished in the same way as principals.  Penal Code, §§ 46, 257, 261.  Besides if the suborner is in law the accessory of the perjurer, it required no statute to define his offense, but the case would have been within the general rule applicable to the case of all accessories.

3–5.  If not accessories, the suborner and the perjurer are not accomplices.  It is true that participation in many of the acts going to make up the two separate offenses is of such a nature as apparently to bring each close to the rule requiring corroboration ; and there are some cases which hold that if the witness was in any sense a particeps criminis, there must be corroboration of his testimony before a conviction could be sustained.  Roach v. State, 4 Tex. App. 46.   On the other hand, when the rights of the public or of the defendant depend on the meaning of this word, neither can expect the courts to do other than apply the definition accepted and recognized in the law.  The term can not be used in a loose or popular sense, so as to embrace one having guilty knowledge, or morally delinquent, or who was even an admitted participant in a related, but distinct offense.   U. S. v. Van Leuven, 65 Fed. 78 ; People v. Sternberg, 111 Cal. 6.    It must appear that the witness is an accomplice, before the law relating to accomplices can be invoked; and according to the rule laid down in many approved cases, and expressly adopted in *Keller* v. *State,* 102 *Ga.* 506, he is such only when it is shown that he could have been tried as principal or accessory in the offense under investigation.   Others may be, but the woman can not be an accessory to seduction or rape of herself.  For her to aid in the rape or to procure some one to seduce her negatives the existence of the essential element of such crimes.   So likewise, in the. very nature of things, Linda Green could not procure Stone to procure her to commit perjury.   And if she could not thus be an accessory to suborning herself, it would logically result that she is not within the definition of an accomplice.   The same test has been applied in other and similar cases, where the separate act of two was as necessary to complete the crime as in subornation and perjury. While there is some conflict in the authorities, most of the courts

hold that the woman who consents to an abortion is not an accomplice of the abortionist, and that he may therefore be convicted on her uncorroborated testimony, notwithstanding she is a particeps criminis; and it will not do to say that she is a victim, for the rule is the same where she seeks out the physician and procures him to do the felonious act.    So, where one is being tried for the illegal sale of liquor a conviction has been sustained on the testimony of the purchaser, although the sale could not have been made without the latter's concurrent act in buying.    But since the statute does not punish him, he could not be convicted as an accessory, and hence is not an accomplice within the meaning of that word as defined in the test given above.    In Queen *v*. Boyes, 1 Best & Smith, 3112 (8), on the trial of an information for bribery, the three witnesses who had received the money testified: semble, "that these witnesses, if accomplices of the defendant at all, were not accomplices in such a sense as to require corroboration."    In adultery the act, offense, and punishment of both participants is the same; both could be punished as principals, and each is therefore usually treated as the accomplice of the other.

While there must be fornication before the completion of the independent, though concurrent, crime of seduction, yet, as the woman could not be tried as principal or accessory to the crime of seducing herself, this court, contrary to the views taken by others, held, in *Keller* v. *State*, supra, that the seducer may be convicted on her uncorroborated testimony.    So, by parity of reasoning, and in strict analogy, one who suborns, or seduces, another to commit the crime of perjury may be convicted on the testimony of the perjurer.    In State *v*. Renswick (Minn.), 88 N. W. 22, the court held that the constituent element of perjury must be proved by two witnesses or one witness and corroborating circumstances, but the fact that he was induced to commit perjury by the person on trial for subornation may be established by the perjurer's uncorroborated testimony.    And a similar ruling was made in U. S. *v*. Thompson, 31 Fed. 331, where it was said, "the person solicited to commit perjury is not an accomplice in the crime of subornation committed by the person who suborned him; and the fact that he committed the perjury does not prevent the jury from convicting the suborner . . . on his testimony."    By a divided bench the Court of Appeals of New York, in People *v*. Evans, 40 N. Y. 5, in

effect, held to the contrary, saying that "the general rule is well settled that a prisoner may be convicted upon the sole uncorroborated testimony of an accomplice, but the crime of subornation of perjury forms an exception to the general rule." That case is opposed to the principle settled for us in *Keller* v. *State*, and, besides, was decided before the adoption of the New York statute similar to ours on the competency of witnesses, and probably does not state the rule which would now be followed in New York. See the history of the change, and the comments on this decision, in 29 Am. & Eng. Enc. L. (1st ed.) 781; and People *v.* O'Neil, 109 N. Y. 251.

We will not discuss the question as to how far the admission by the defendant in his statement, that he had gone to Linda Green's house at night and there talked with her as to her testimony, may amount to corroboration; nor whether Annie and Eliza Green could be accomplices because only concerned in a related but distinct offense. People *v.* Sternberg, 111 Cal. 6. And having determined that Linda Green, the perjurer, was not a technical accomplice of Stone, the alleged suborner, it would be unnecessary to consider the necessity for corroboration, but for the fact that the plaintiff in error raised the point both by requests to charge and also in an attack on the verdict as being contrary to law. He insists that these three witnesses were at least participants in the crime, and if not accomplices within the letter of the definition, they were such in substance; that in considering the probative value of testimony the spirit of the rule should govern, and verbal niceties should be ignored; that according to the practice in criminal cases the jury were instructed not to convict even on the uncorroborated testimony of two or more accomplices; and that in the present case the application of these well-recognized principles of law demanded Stone's acquittal.

This argument necessarily proceeds upon the idea that accomplices in all respects form an exception to the rule laid down as to the right of the jury to pass upon the credibility of impeached witnesses (Civil Code, § 5295); that their testimony is inherently bad; that to add testimony of one accomplice to that of another is to add nothing to nothing, the result still being nothing. On the contrary, on general principles, and until a comparatively recent date, the testimony of even a single accomplice was sufficient

to support a conviction. At common law where one had been found guilty of a felony, and judgment had been entered thereon, he was considered infamous and incompetent to testify.. But when the witness showed that he was in fact guilty of a felony as an accomplice of the defendant on trial, it appeared that nothing was needed except a formal judgment to render him actually incompetent. This, among other reasons, finally led the judges, in the exercise of their broad power to advise concerning evidence, to caution the jury that while they could consider such testimony, it ought to be corroborated before a verdict could be sustained thereby. In his work on Testimony of Accomplices, pp. 1–6, Baron Joy says: "At what time the regulation came to be adopted is not easy to ascertain. . . . In the conduct of Lord Holt it is nowhere discoverable. I do not find that Lord Hardwicke, when he presided in the King's Bench, had an idea of its existence; and even Lord· Mansfield does not seem (at least in the year 1775) to have had a conception either of its existence or its necessity." As late as 1788 Buller, J., being in doubt "whether the evidence of an accomplice ·unconfirmed by any other evidence that could materially affect the case was sufficient to warrant a conviction," referred the case to the consideration of the full bench, and in passing sentence announced that the judges were unanimously of opinion that an accomplice alone is a competent witness, and if the jury, weighing the probability of his testimony, think him worthy of belief, a conviction supported by such testimony alone is perfectly legal. King *v.* Atwood, 1 Leach, 464; Com. *v.* Holmes, 127 Mass. 424. And when the regulation was finally and firmly established, its application was in the discretion of the trial judge. As late as 1861 Chief Justice Cockburn, in Reg. *v.* Boyes, 9 Cox's C. C. 35, on a trial for bribery, where those who took the money were witnesses, said: "I protest against its being the duty of the judge to direct the jury to acquit because the evidence of an accomplice is uncorroborated." Even in States where the rule obtains, the accused is not entitled, as matter of right, to have it given in charge. Thus in Com. *v.* Wilson, 152 Mass. 12, it was said that it is a· general rule of practice, but not a rule of law, to advise the jury not to convict upon the uncorroborated testimony of an accomplice; and the judge presiding at the trial may, in his discretion, decline to adopt the rule, and may refuse so to advise the jury, or to define.

corroborative evidence within the meaning of the rule. But even if it be treated as a rule of law, it was not of force in England on May 14, 1776, and therefore not within the terms of our adopting statute. Act of Sept. 16, 1777, Watkins' Dig. 202; Act of Feb. 25, 1784, Cobb's Dig. 721. That a judgment on a conviction for a felony ·rendered a witness infamous was probably true in this State until the act of 1866 (Acts 1866, p. 138), Civil Code, § 5269. Compare Cobb's Dig. 840, par. 340. And even if the same reasons which caused the adoption of the rule in England were consequently operative in this State, they ceased to be longer applicable when, by the act of 1866, ·a conviction for crime no longer rendered a witness incompetent. *Fain* v. *State*, 40 *Ga.* 534 (5). Certainly as a rule of practice it ceased to have any validity when by Civil Code, § 4334, the judges were prohibited from longer advising the jury as to what had or had not been proved, or expressing any opinion as to the evidence or of the weight to be given thereto. State *v.* Green (S. C.), 26 S. E. 234, 238. The only part saved is that contained in the Penal Code, § 991, which requires corroboration in any case of felony where the *only* witness is an accomplice. So that, while elsewhere the regulation is broader, it is only one of practice. In Georgia it is more restricted, but a rule of law to the extent laid down in the Penal Code, § 991, Civil Code, § 5156, which, however, is not an attempt to codify the principle as enforced in England. There it was applicable to cases of misdemeanor as well as of felony. Taylor on Evidence (9th ed.), § 968. Here the complicity of the witness in misdemeanor cases merely goes to his credit, and the rule applies only to cases of felony. *Parsons* v. *State*, 43 *Ga.* 197. Nor does the section appear to deal with the effect of the testimony of more than one accomplice. In other States one accomplice can not generally corroborate another; but our code is silent on that point. The point was assumed, but not expressly dealt with, in *Johnson* v. *State*, 92 *Ga.* 578. An analysis of the section will show that it is dealing with the "number of witnesses necessary." It begins by laying down the proposition that "the testimony of a *single* witness is generally sufficient to establish a fact." It then proceeds to ·provide that "exceptions to this rule are made in specified cases, such as to convict of treason or perjury, and in any case of· felony where the *only* witness is an accomplice; in these cases

(except in treason) corroborating circumstances may dispense with *another* witness." The statute being silent, the courts have no right to extend the exceptions beyond its terms. *Childress* v. *State,* 52 *Ga.* 117. Nor does the provision in the Political Code, § 4, par. 4, that the singular includes the plural, apply when it is apparent that the statute is dealing with the number of witnesses necessary, and expressly declaring that one is sufficient except in specified cases.

6. The accused renews the attack on the verdict in view of the admission by Linda Green and her two daughters that they had committed perjury. As this was on the trial of a different case, though in reference to the same general transaction, there was no request to charge as to the necessity for corroboration under Civil Code, § 5295. *Stafford* v. *State,* 55 *Ga.* 592; United States *v.* Thompson, 31 Fed. 333. As even conviction of the crime would not have rendered the witnesses incompetent, it was but another fact to be considered by the jury in determining what credit should be given their evidence. Civil Code, § 5294. In People *v.* O'Neil, 109 N. Y. 251, it was shown that two of the witnesses for the State had, in their testimony before a senate committee, committed perjury in reference to the same matter which was involved in the prosecution for bribery. It was objected that a conviction could not be sustained on their testimony, and Judge Andrews, after reciting the New York statute, which is similar to that contained in the Civil Code, § 5269, declaring that no witness should be incompetent because of his conviction for a crime, said that "the testimony of a witness who has committed perjury in the same matter on a prior occasion must be considered by the jury in connection with the other evidence, under such prudential instructions as may be given by the court. See also *Owen* v. *Palmour,* 111 *Ga.* 885 (2); *Phœnix Ins. Co.* v. *Gray,* 113 *Ga.* 432 (3). That a witness is an accomplice, or a participant in a related offense, or a perjurer on the trial of a different case as to the same subject-matter, or is of bad character, goes to his credibility. Such facts are, of course, matter for argument and careful consideration by the jury. No doubt they scan with anxious deliberation evidence coming from such sources. But one previously perjured may tell the truth in the case then on trial; and if, after rigid cross-examination, hearing all the testimony and listen-

ing to the statement of the defendant himself, the jury are satisfied that the testimony of such witness is true,— if it is consistent, probable, and bears the stamp of truth,—they may accept it and act on it, and this court can not disregard their finding, nor say that the evidence was insufficient to warrant the verdict. The duty of passing on the credibility of this class of witnesses, without advice from the presiding judge, is but one of the added responsibilities resulting from the enlarged powers conferred upon jurors. In a criminal trial they owe a duty to society to see that the guilty are punished; and they are under the same duty to see that the innocent are not convicted. To discharge these high and solemn obligations they must apply the tests of sound sense and their experience as practical men to determine whether the evidence is so untrustworthy as to entitle the defendant to an acquittal, or whether it proves to their satisfaction beyond a reasonable doubt that the prisoner has violated the laws of his State and should suffer a deserved punishment.

7. The foregoing rulings apply to the bill of exceptions pendente lite, and to the 9th, 14th, 15th, 19th, 22d, 23d, and 24th grounds of the motion. The assignments in the 1st, 2d, 3d, 4th, 5th, 7th, 8th, 10th, 11th, 12th, 13th, and 16th grounds may be grouped and considered together. According to the theory of the State, the coaching of the witnesses extended over a period of several weeks. In this Stone and Johnson are said to have participated with the connivance of Riley Green, the husband of Linda Green. Most, if not all, of the transactions took place in the latter's house, and some, if not all, were in the presence of the mother and the two daughters,— Stone and Johnson both being present. The defendant objected to evidence of statements by Stone, or by Johnson in his presence, to the two daughters as to what their testimony should be, on the ground that, as this particular indictment did not allege any subornation of perjury as to Eliza and Annie Green, such statements were inadmissible and irrelevant. It is not necessary to set out the objections in extenso, because the sayings and acts were certainly admissible as part of the general scheme by Stone to procure evidence which would secure the acquittal of Newsome; and while this involved the commission of separate acts of perjury by the mother and the two daughters, and separate crimes of subornation by Stone, it was all relevant in that

it shed light as to the motive, intent, and character of his conduct. Some of these conversations were in his presence, and all of the transactions were within the scope of his criminal purpose, and by one or another of those he had selected as tools to accomplish his design.        While independent of each other, all of the witnesses were concerned with Stone, and the evidence, if not a part of the res gestæ, was clearly relevant within the meaning of the Civil Code, § 5158.        The laws of evidence are adjusted to the laws of mind as well as to the laws of the land, and any fact is relevant which, when taken alone or in connection with another, would warrant the jury in drawing a logical inference with reference to the issue on trial.

8.        The first ground of the amended motion for a new trial is that the court admitted the testimony of Linda Green as to messages alleged to have been sent to her by Stone through her husband, Riley Green, on the statment by the solicitor-general that he expected to make proof by Riley that the messages had in fact been sent by Stone.        In the sixth ground it is assigned as error that Riley Green having clearly failed to connect the testimony of his wife with that alleged conversation with the defendant, and having failed to state that he told his wife what the defendant had said, the court failed to rule out the testimony.        No new motion was made to that effect.        Where incompetent evidence is admitted on the statement that it will be subsequently connected and made admissible, it is the right of the objecting counsel to renew his motion at a later stage of the trial; and if the connection has not been made, it will then be the duty of the court to exclude the testimony with proper instructions to the jury not to be influenced thereby.        But it can not be expected that in a long and tedious trial the court should bear these matters in mind, and of his own motion exclude what has been thus provisionally admitted.        It is for counsel interested to remind him of the circumstances and have it ruled out, if he so desires.        It may often happen that counsel may prefer to let the evidence remain in the record.        Subsequent testimony may make the former evidence helpful to the party who originally objected.        At any rate, if counsel remain silent, the court is authorized to conclude that the party regards the evidence admitted as immaterial, not hurtful, or possibly helpful.

It was not error to charge the law relating to perjury, and the

rules of evidence relating thereto. In a trial for perjury it is oath against oath, and in the nature of the case there must be two witnesses, or one witness and corroborating circumstances, to convict. Penal Code, § 991. But subornation of perjury stands on an entirely different footing. The suborner's act is not committed by means of his oath, and one witness is sufficient to establish what he did. State *v.* Renswick, 88 N. W. 22. It is, however, necessary to show that the person suborned did actually commit the crime of perjury, and as to that portion of the case the court properly charged that the general rule as to perjury would apply, and two witnesses, or one witness and corroborating circumstances, would be necessary to establish the fact of perjury. Commonwealth *v.* Douglass, 5 Met. 241; 2 Roscoe's Cr. Ev. 1079, *864. In this case Linda Green admitted that she had committed perjury on the trial of Newsome. That was probably sufficient; but it was corroborated by the testimony of her two daughters, and that of W. W. Campbell, who was driving on the road, and witnessed the killing of Lula James by Newsome.

The definition of subornation of perjury is absolutely concise. Whoever shall procure another to commit the crime of perjury is guilty of subornation of perjury. It says nothing as to how the procurement shall be made successful; and the indictment, being in the language of the code, was sufficient without showing how and why the threat to prosecute procured and induced the perjury. Penal Code, § 260; State *v.* Greer (Kan.), 30 Pac. 236 (1).

We find nothing requiring the granting of a new trial in any of the other grounds of the motion. There was no error in the court's statement of the contentions on the part of the prosecution. The necessity for knowledge by Stone of the falsity of Green's testimony was included in the general charge. People *v.* Clement (Wis.), 86 N. W. 535; Com. *v.* Devine, 29 N. E. 515. The instructions as to the effect of impeachment were substantially within the provisions of the code. The charge as to reasonable doubt and the certainty of proof required were correct.

Justice Turner did not preside on the argument, but, having taken part in the consideration of the case, and the several conferences thereon, authorizes the statement that he concurs in the foregoing opinion.

*Judgment affirmed.　　All the Justices concur.*