## BLACKWELL *v.* HOUSTON COUNTY.

No. 6529.   March 2, 1929.

*L. D. Moore,* for plaintiff.

*Duncan & Nunn* and *C. E. Brunson,* for defendant.

Russell, C. J.   A. C. Blackwell brought suit against Houston County, to recover possession of 16.32 acres of land alleged to belong to the plaintiff.   The petition was amended by alleging that 2.3 acres of the 16.32 acres had never been in possession of the county, but was in the possession of the plaintiff as a pasture and had been so used by him since January, 1917.   A plat of this 2.3 acres, made by the surveyor of Houston County, was attached to the amendment.   The amendment in effect made the proceeding a complaint for 14 acres of land adjoining the plaintiff's home place on the west.   The county answered, admitting possession of the land, denying that it belonged to the plaintiff, and denying that the abstract of title attached to the petition covered the land in dispute.   The answer did not set up any title or right of possession in the county.   The trial resulted in a verdict in favor of the defendant. A motion for new trial was overruled, and the plaintiff excepted.   The motion for a new trial contains, in addition to the general grounds, the following:

(1)   "The court erred in refusing to allow A. C. Blackwell to testify in his own behalf that he had a conversation with C. C. and R. H. Lavelle in reference to the dividing line between movant and

the land known as the Cobb place, it being the line in controversy in the case on trial. Movant would have testified that he and C. C. and R. H. Lavelle did then and there upon the ground agree that a certain wire fence then standing upon the land represented the dividing line between movant and said C. C. and R. H. Lavelle; that said fence so standing was the dividing line between the Cobb camp-ground tract and the Killen place at that time owned and in possession of movant." The defendant objected to this testimony, upon the ground that C. C. Lavelle was not a party to the title, and R. H. Lavelle was shown to be one of the minors in the deed, and the sale by the administrator was void because Houston County, as shown by the evidence, had been in possession of the land for a number of years. Movant insists that C. C. and R. H. Lavelle claimed to be the adjoining landowners and that movant agreed with the Lavelles that the fence then upon the land represented the dividing line between them. The court erred in excluding the evidence, for the reason that the defendant did not claim title to the land at any time for any purpose, that movant had erected a fence to represent the dividing line which theretofore had been in controversy, and that he continued to occupy the land enclosed by this fence until the fence was removed by direction of the officers of Houston County.

(2) The court erred in refusing to allow the plaintiff to testify that he went before the commissioners of Houston County in regular session with all the commissioners present, and that Powers Cooper, one of the commissioners, said that they took possession of the land in controversy through a mistake, and that the county would have perhaps surrendered the land to him if he had not erected a wire fence enclosing the land, being the wire fence built by movant to represent the dividing line between the Killen place owned by him and the Cobb land; the defendant objecting upon the ground. that county commissioners speak only by record and minutes, and that J. P. Cooper, a member of the board, was not the mouthpiece of the board as a court to express the attitude or claim of the county.

(3) The court erred in permitting E. J. Thompson to testify that "there was no peach orchard there then, but there was an oak tree that has been torn up that Killen marked on. I did not see the Killen survey made, but he left his stob and marked trees.

Mr. Killen was making the survey for me and the Cobb estate, and he went out there and showed me where he made the survey and marked on the trees." This was objected to so far as it related to a line run by Killen, on the ground that the witness did not see the survey made, and all the information he had was hearsay; and because the court erred in allowing the same witness to further testify: "I only know where the original line between lots 315 and 316 was by the Killen survey. He showed me where he made his survey, but I did not see him make it." This evidence was allowed over objection that it was hearsay, and that the only knowledge the witness had was that which came to him.

(4) The court erred in admitting a copy of a plat purporting to have been made by H. D. Cutter on April 24, 1917, which appears in the brief of evidence marked exhibit "D." This plat was objected to upon the ground that Cutter testified: "As far as I can recollect and as far as I can tell, this seems to be identical with the original plat I made. I do not remember now where I began or where I quit, for it has been eight or ten years ago, and I expect I have made a thousand of them since that time." It also appeared from the evidence of S. A. Nunn that he received a plat from the Federal Lank Bank of Columbia. This plat was admitted over the objection that it was not proved to be a correct representation of what it purported to show, or proved to be a correct copy of the original.

(5) The court erred in admitting, over objection, a plat purporting to be a copy recorded in deed book 4, page 84, in the clerk's office of Houston superior court, as testified to by E. J. Thompson, and purporting to represent a strip of twenty acres across the west end of lot 315, marked E. J. Thompson. This plat was objected to upon the grounds (1) that it was not proved to be correct, and (2) that the copy offered in evidence was not proved to be a correct copy, and did not purport to have been made by a surveyor of Houston County or elsewhere.

(6) Because the court charged the jury: "There are certain rules laid down by the law that should be followed by the jury in all cases of disputed lines. Natural landmarks, being less liable to change and not capable of counterfeit, shall be the most conclusive evidence. Ancient or general landmarks such as corner stations and marked trees shall control the courses and distances

called for by the survey." This instruction is assigned as error, because there was no evidence to authorize it, and the jury were misled upon the idea that the tree referred to in Thompson's evidence as having been marked by Killen was evidence which should control the jury. "And because the court erred in further charging, in the same connection," that "the general reputation in the neighborhood shall be evidence as to ancient landmarks of more than thirty years standing." This is assigned as error, for the reason that there was no evidence to authorize it, there being no evidence showing general reputation in the neighborhood, or that there were any ancient landmarks existing for more than thirty years, it not appearing from the evidence that the trees mentioned and referred to by Thompson and Tucker were ancient landmarks more than thirty years old, or that they were so reputed to be in the neighborhood.

(7) Because of newly discovered evidence, to wit: A plat showing a survey by G. W. Killen, county surveyor, showing the original lot line on the east side of lot 315, running north and south between lots 315 and 274; and having discovered said plat since the trial, and being thereby able to establish the line of the east side of lot 315, it appears that the line claimed to be the east line of the Cobb tract by the defendant is not correct, but that the correct line on the east side of the Cobb tract is 154.9 feet further removed to the west than the point claimed by the defendant to be the east line of the Cobb tract. Said plat is attached to an affidavit by movant and his counsel that neither of them knew of the existence of said plat at the time the case was tried; and the affidavit of Rhodes Sewell, surveyor of Houston County, that he made measurements from the line so appearing on said plat made by Killen, westward across lot 315, 2970 feet to a point representing a line on the west side of lot 315 and the east side of lot 316; also a plat showing a survey made by Rhodes Sewell, attached to his affidavit. And the newly discovered testimony shown by the affidavit of N. L. Cooper, that he has owned land adjoining lot 315 now owned by A. C. Blackwell, known as the Killen place, for twenty-one years, and that there was a sycamore tree standing at or near the southeast corner of lot 315 when he bought adjoining lands of W. F. Killen, and that W. F. Killen told affiant said tree was at or near the corner of three acres of lot 274 bought by affiant from

Killen, which adjoins lot 315. Also newly discovered evidence shown by affidavit of G. L. Harris, that an iron stob stood on the south side of the Perry and Marshallville road, which marked the north and south line of lot 316; which was unknown to movant at the time said case was tried, and which movant discovered by being told of a conversation which was overheard since the trial, on account of which movant made inquiry and obtained the information set out in the affidavit of G. L. Harris.

■ The court did not err in excluding from evidence the testimony stated in the first special ground. It is true that the defendant did not in its answer claim title to the land, and would not be able to prevail in the suit unless it showed such an outstanding title as would enable a third party to maintain an action for the possession of the land in controversy against both the plaintiff and the defendant, under the principles announced in *Ashley* v. *Cook*, 109 *Ga.* 653 (35 S. E. 89), citing *Fletcher* v. *Perry*, 97 *Ga.* 369 (23 S. E. 824). However, in this case it must be borne in mind that the plaintiff introduced a sheriff's deed for taxes, which ostensibly put the title to the tract of land in dispute in the County of Houston. This muniment of title was introduced by the plaintiff for the purpose of attacking it, but the purpose for which it was introduced did not prevent it from showing a title in Houston County. By introducing this deed the plaintiff none the less showed that Houston County had color of title, unless and until by attacking it the plaintiff showed that this deed was not a good muniment of title. It is insisted that the levy of the tax fi. fa. was void, because the levy was excessive. In view of the evidence offered in behalf of the defendant, which showed that Houston County had been renting the premises to various persons for more than seven years, the tax deed executed by the sheriff was good as color of title and ripened a title by prescription. According to some of the testimony for the defendant, the county through its predecessors had held possession for a far greater length of time than seven years. The deed introduced to be attacked was evidence of the fact that the Lavelles were liable for the taxes at the time indicated by the fi. fa., and that it was sold as their property. While they could assert the invalidity of the execution upon the ground that the levy was excessive, a stranger can not avoid a deed which is antagonistic to his interests by reason of

the fact that the levy and sale upon which a competing title was obtained is void. However this may be, the court did not err in excluding the testimony of Blackwell as to the admissions of Lavelle made to him, to the effect that Blackwell's wire fence which was torn down by the county authorities was the true line of Blackwell on the west, for the reason that it appears as a consequence of the sheriff's sale of the land to Houston County, and by other evidence, that Lavelle was not in possession of the land at the time the admissions were made by him.

There was no error in rejecting testimony of the plaintiff to the effect that he went before the county commissioners and that one of the commissioners in the presence of the others said that the commissioners took possession of the land through a mistake, and that the county would perhaps have surrendered the land if plaintiff had not erected the wire fence enclosing the land. In such matters the county commissioners speak only by records and minutes. A verbal expression of opinion or statement of facts, whether made by one of the members of a board of county commissioners or by all of them, is of no binding effect, nor are admissions or statements as to the county's ownership of property or as to the extent of such property binding upon the county. Evidence of any alleged admission by a county, and especially of one detrimental to the interests of the county, must appear upon the minutes. Civil Code (1910), § 4844.

In the third special ground of the motion for new trial it is insisted that the court erred in permitting a witness to testify as set forth in the statement of facts. The evidence was objected to on the ground that the witness did not see Killen make the survey, and for that reason his testimony was hearsay. This objection is without merit, for the witness testified that before Blackwell moved upon the place where he now lives and before there was any peach orchard, there was an oak tree, since torn up, that Killen marked on. The witness testified that, while he did not see the survey made, Killen was making the survey for him, and that he showed the witness where he made the survey and marked the trees. The evidence was properly admitted. Where one employs a surveyor as the witness Thompson had done in this instance, unless he is expert in surveying, his only knowledge is derived from having pointed out to him, as Killen did to Thompson, the surveyor's

stobs and marked trees, and it is not improper in such an instance for the witness to testify what the surveyor told him as to the corners and boundary lines of the premises surveyed, when the surveyor has died. It is a matter of such common knowledge as to be within judicial cognizance that a surveyor is often compelled to run more than one line, or to set up more than one line of stakes, before the true line can be found and located. So even if the witness Thompson, for whom the survey was being made, had actually observed the actions of the surveyor as he peered through his transit and signaled to his lineman where to place the stakes, if more than one such line were necessary to locate the true line, he could not know where the final and true line was located unless it were pointed out to him by the surveyor. The act of the surveyor in pointing out stobs and blazed trees, indicating the line finally located by him as the true line, was the act of a public officer declaratory of the result of his work as such public officer. However, even if the act of Killen in pointing out the stobs and blazed trees indicating the line which he had run for Thompson, when testified about by Thompson, be held to be hearsay, such testimony is an exception to the general rule that hearsay testimony is not admissible. "The best evidence which exists of the fact sought to be proved must be produced, unless its absence is satisfactorily accounted for." Civil Code (1910), § 5748. "In order to admit secondary evidence, it must appear that the primary evidence for some sufficient cause is not accessible to the diligence of the party. This showing is made to the court, who will hear the party himself on the question of diligence and the inaccessibility of the primary evidence." § 5759. It appears from the evidence that the surveyor, Killen, was dead. This survey was made in 1903, and this court judicially knows that he was at that time the county surveyor of Houston County. *Abrams* v. *State*, 121 *Ga.* 170 (48 S. E. 965). It has been held in many jurisdictions that "the declarations of a deceased surveyor as to the location of a survey line or corner of a survey made by him are admissible." So even if the testimony of Thompson as to the physical fact of the line being pointed out to him by the surveyor is hearsay, we do not think the trial judge erred in admitting it. Furthermore, this ground of the motion is without merit, for the further reason that substantially the same testimony was adduced from the witness by counsel for the plaintiff on cross-examination.

■ In the fourth special ground of the motion for a new trial it is alleged that the court erred in admitting a copy of a plat purporting to have been made by H. D. Cutter. No plat is attached to this ground, but it is stated that the plat "appears in the brief of evidence, marked exhibit 'D.'" Under a well-settled rule, grounds of a motion for a new trial must be complete in themselves, and any evidence material to a consideration of the assignment of error must be embodied and contained in the motion for a new trial. In no instance will this court examine the brief of evidence in order to ascertain whether the recital in the motion for a new trial is in fact true. For the reason that the fifth ground of the motion is similarly incomplete, it will not be considered.

■ Considering the evidence in the case, the ruling in the third headnote requires no elaboration.

■ There are several reasons why the overruling of the seventh ground of the motion does not require a reversal of the judgment refusing a new trial. This ground is based upon testimony of G. O. Harris, Rhodes Sewell, and M. L. Cooper, to be introduced should a new trial be granted. G. O. Harris was sworn and testified upon the trial. He was called by the plaintiff, examined by him, and cross-examined by the defendant. There is no affidavit, as required by law, stating that by the exercise of ordinary diligence the testimony now alleged to be newly discovered could not have been ascertained. In *Hall* v. *State,* 117 *Ga.* 263 (43 S. E. 718), it was held that "Where witnesses summoned by the defendant are present at the trial, but are not examined, a new trial will not be granted on the ground that since the verdict the defendant has for the first time learned that they could have testified to facts material to his defense." To the same effect is the ruling in the comparatively recent case of *Rounsaville* v. *State,* 163 *Ga.* 391 (136 S. E. 276). The cases cited were criminal cases, but section 6085 of the Civil Code, dealing with the grant of new trials upon newly discovered evidence, is identical in its language with section 1088 of the Penal Code upon the same subject; and if there is any difference, a more liberal construction should be given to the law where one's person and liberty are affected than where mere property rights are involved. The affidavits of C. H. Hardison and J. T. Griggs, supporting the witness G. O. Harris, contain the statement "that said G. O. Harris bears a good reputation in the

neighborhood in which he lives, and associates with the best people in the community, and in affiants' opinion is worthy, truthful, and entitled to belief." This is not sufficient. "'If the newly discovered evidence is that of witnesses, affidavits as to the residence, associates, means of knowledge, character, and credibility must be adduced.' Civil Code, § 6086; *Phillips* v. *State,* 138 *Ga.* 815 (76 S. E. 352); *Hart* v. *State,* 141 *Ga.* 672 (81 S. E. 1108); *Maddox* v. *Jones,* 146 *Ga.* 504 (91 S. E. 542). . . This affidavit is deficient in several respects. It alleges that this witness 'keeps good company,' but fails to name his associates. . . This affidavit is silent as to his means of knowledge. This being so, the showing for a new trial on this ground was defective; and the judge did not abuse his discretion in refusing a new trial on this ground." *Ivy* v. *State,* 154 *Ga.* 63, 67 (113 S. E. 175).

There is no supporting affidavit as to M. L. Cooper or as to Rhodes Sewell. In the affidavit of the plaintiff it does not appear that the information given to him by M. L. Cooper could not have been discovered by the exercise of ordinary diligence. The code section requires that counsel as well as movant must aver that the alleged newly discovered evidence "could not have been discovered by the exercise of ordinary diligence," and no such statement is contained in the affidavit of sole counsel for plaintiff. For these reasons the court did not err in overruling the seventh ground of the motion for a new trial. We are the better satisfied with this ruling, because an examination of the alleged newly discovered evidence discloses that it is merely cumulative to that adduced by the plaintiff upon the trial; and a new trial is never granted when the alleged newly discovered evidence upon which the application is based is merely cumulative or impeaching. Civil Code, (1910), § 6085. As said in *Patterson* v. *Collier,* 77 *Ga.* 292, 296 (3 S. E. 119), "An extraordinary motion for a new trial, based alone upon newly discovered evidence, ought not to prevail unless there has been full diligence to procure the evidence before the trial; nor unless the new evidence would probably produce a different verdict if a new trial were had. There is nothing new in this proposition, and it is not worth while to pause to elaborate it."

The controlling question in this case was the ascertainment of the true boundary line of the plaintiff's property on the west side of the tract of land of which he is in possession. By his peti-

tion he sought to recover possession of about 14 acres of land of which he alleged the defendant was in possession and which he alleged would extend his possession westwardly some hundreds of feet, so as to include the land in controversy, which is bounded on the south by the public road and on the north or northwardly by the plaintiff's pasture which is enclosed with a wire fence erected a number of years ago. There was much testimony in regard to the location of an ancient and venerable camp ground, the exact situs of which does not appear to have been solved by the testimony. But the location of this camp ground is of very little, if any, materiality in this case, because it seems clear from the plats introduced by the plaintiff that a portion of this religious meeting-place is in the possession of the plaintiff; and if any portion of it is not in his possession, it is included in the land in dispute. The contention of the plaintiff is that all of it is his land, though he is not in possession of the entire six and one half acres deeded by Killen to the trustees of the church which once used the camp ground. Since the Killen tract was not bounded by lines parallel with land lot 315, its exact location, in our view of this case, becomes immaterial in this suit. If it can be held that the evidence in behalf of the defendant or the evidence as a whole authorized a finding in favor of the defendant as against the claim of the plaintiff to possession of the entire tract of 14 acres for which he sues, it would make no difference whether a portion of it was included in the camp ground under a deed executed in 1849. Upon the vital issue in the case, that is, what is the true line between the plaintiff and his coterminous owner on the west side, the testimony of E. J. Thompson alone would have authorized the verdict. He testified positively that the plaintiff admitted that his peach orchard, which is in the southwest corner of the tract of land of which the plaintiff is in possession, extended to his west boundary. In the state of the record, and with some circumstances corroborative of Thompson's testimony, the admission related authorized the jury to find that the west line of the peach orchard, which appears to be parallel with the land lot line, marked the limits of the plaintiff's holding. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*