30039. JONES *v.* THE STATE.

432

Decided December 2, 1943. Adhered to on Rehearing, December 20, 1943.

*Heyman, Howell & Heyman,* for plaintiff in error.

*John A. Boykin, solicitor-general, Durwood T. Pye, E. E. Andrews, C. E. Presley,* contra.

MacIntyre, J. ▉ The indictment charged Johnny J. Jones with subornation of perjury in two counts. The first count charged that Jones, on July 10, 1941, did advise, counsel, and procure Kinard to commit perjury in the trial of a divorce suit brought by Kinard against his wife in the superior court of Fulton County, Georgia, in that the accused did procure Kinard to testify falsely in said case that he was then and had been for two years a resident of Fulton County, Georgia, and to other facts relative to his claim of residence in Fulton County; and that Kinard did so commit perjury in that case. The second count charged that Jones, on July 10, 1941, did advise, counsel, and procure Mrs. Susie L. Tant to commit perjury in the trial of a divorce suit brought in Fulton superior court by Mrs. Tant against her husband, in that the accused did procure Mrs. Tant to testify falsely, in said case, that she was then and had been for two years a resident of Fulton County, Georgia, and to testify falsely to other facts relative to her alleged residence in Fulton County; and that Mrs. Tant did so commit perjury in that case. The defendant was convicted of both offenses; and to the overruling of his motion for new trial, containing the general grounds and twenty-one special grounds, he excepted. The burden was on the State to establish, in each count, (1) the commission of perjury by the person suborned, and (2) that the defendant wilfully procured or induced such person to

commit the perjury. The State was required to prove the perjury by two witnesses, or one witness and corroborating circumstances. The State might prove the subornation by the sole testimony of the person suborned. *Bell* v. *State,* 5 *Ga. App.* 701 (1, 2) (63 S. E. 860); *Mallard* v. *State,* 19 *Ga. App.* 99 (90 S. E. 1044); *Stone* v. *State,* 118 *Ga.* 705 (45 S. E. 630, 98 Am. St. R. 145). To prove the perjury of the person suborned, the State was required to show (1) that the person alleged to have been suborned testified substantially to the matters charged, (2) the wilful and absolute falsity of the testimony, (3) that the testimony was material, (4) that the testimony was given in a judicial proceeding, and (5) that a lawful oath was administered. Code, § 26-4001. The first, fourth, and fifth of these elements, to wit, that the testimony charged to have been given was actually given, that the testimony was given in a judicial proceeding, and that a lawful oath was administered, were proved by the positive testimony of the persons suborned, and by the positive testimony of Judge A. L. Etheridge and J. H. Bush, and by the record of the divorce proceeding. That the testimony as to residence was material appears as a matter of law from the nature of the proceeding in which it was given, that is, a divorce action in which it was alleged that the defendant was a non-resident of Georgia. Such an action must necessarily be brought in the county of the residence of the plaintiff, who must also have been a resident of Georgia for twelve months before bringing the action. Code, §§ 2-4301, 30-107. The evidence supporting count 1, which related to the perjury of Kinard, was that Kinard swore that the testimony given by him in his divorce case to the effect that he was then a resident of Fulton County, Georgia, and had been for two years was false, and that the defendant procured him so to swear falsely. The evidence of Kinard, Judge Etheridge, and J. H. Bush, and the record in the divorce suit, showed that Kinard's testimony in the divorce suit was given on July 10, 1941. There was admitted in evidence the record of a divorce action filed by Kinard in Florida on July 5, 1940, in which Kinard alleged, under oath, that he was then an actual bona fide resident of Jacksonville, Duval County, Florida, and had been for more than ninety days before filing the suit; and also the record of the testimony given in that case by Kinard on August 22, 1940, that he was then a resident of Jacksonville, Florida, having moved there on April 6, 1940. The

filing of the Florida action, and the testimony given therein by Kinard, corroborated his testimony given on the trial of Jones that the testimony given by him in the Fulton County divorce action was false; and tended to show that Kinard had not lived in Fulton County for two years at the time he so testified on July 10, 1941. Subsequently the Florida suit proceeded to judgment in favor of Kinard, but on August 29, 1940, that judgment was set aside as null and void, on the ground that Kinard had perpetrated a fraud upon the court in respect to the court's jurisdiction. The circumstances of Kinard's filing the Florida action, which was afterwards set aside for fraud, and of thereafter filing suit in Georgia, in both of which he claimed that each court had jurisdiction by reason of his residence in each State, he having alleged in the Florida suit, filed July 5, 1940, that he was a resident of Florida, and in the Georgia suit, filed February 3, 1941, that he was a resident of Georgia, and had been for twelve months (which was physically impossible if the allegations of the Florida suit were true), all tended to show that he was anxious to procure a divorce from his wife, irrespective of the means necessary, and that he had no regard for the truth of his allegations of residence; and also tended to show that it was likely that he swore falsely in Fulton County when he testified there that he was then a resident of Georgia, and had been for two years; and the jury were authorized to accept these circumstances as corroborative of his testimony on the trial of Jones. The evidence supporting count 2 was Mrs. Tant's testimony that her testimony given on the trial of her divorce action relative to her claim of residence in Fulton County for two years was false. Her testimony on the trial of Jones that her previous testimony was false, and that the defendant procured her so to swear falsely, was corroborated by the correspondence between her and Jones, Mrs. Tant's letters being sent to Jones from South Carolina, and Jones's letters to Mrs. Tant being addressed to her in South Carolina. Particularly corroborative of Mrs. Tant's testimony on the trial of Jones that she had never been a resident of Georgia, and so told the defendant before he filed her suit, but had always been a resident of South Carolina, is a letter addressed to her in South Carolina, written by Jones from Augusta in which he stated, in part: "The reason that your case has not been filed is because just as I explained to you while you were here, there has been a great deal

of contention here where there was any doubt of the fact that the plaintiff in the case had not lived in Georgia twelve months before the filing of the suit for divorce, and for that reason your case has not been filed, though I had hoped that the condition here would blow over, and that I might be able to go ahead with your case just as you wish it done. . . I am planning to file several suits for divorce in Atlanta next Monday, the third, and if you wish me to file your suit in Atlanta, please sign the enclosed affidavit . . and I will go ahead and file your case there along with my other cases and try it just as soon as it's reached for trial. . . I do not think it well for you to file the suit here, on account of the fact that there might be some criticism concerning your residence." Also corroborative of Mrs. Tant's testimony on the trial of Jones that she had always lived in South Carolina, is a letter to her from Jones, dated February 4, 1941, in which he stated, in part: "Please be advised that I received your recent letter . . and immediately went to Atlanta and filed your case on the third of February, returnable to the May Term of court. . . The cost of publishing the citation notices . . is $8 there instead of $4 as here in Richmond County where we first planned to file the suit;" also a letter from Jones to Mrs. Tant, dated September 18, 1941, in which he said: "I have heard pretty straight that some investigation is being made in your case where you sued for divorce in Atlanta, and I would like very much for you to come to my office and come to see me this Sunday . . after which you can return to your work." And also a letter from Mrs. Tant to Jones, in which Mrs. Tant said, in part: "Mr. Jones, I have been thinking this over. If I moved to Augusta could I get support for the child from Julius Tant. . . See then I could board Mr. Kinard over weekends." The evidence is stated separately as it related to each count. It might be noted that Mrs. Tant wrote the defendant that if she moved to Augusta, "then I could board Mr. Kinard over weekends." It developed on the trial of the case that neither of them lived in Georgia; and that both lived in South Carolina. We think that under the facts disclosed by the record in this case, the jury could consider the circumstances of each case relative to the other, and from all the evidence, could conclude from the fact that Kinard swore falsely in his divorce action, at the instance of Jones, both cases being handled together by Jones, and filed by him at the same

time, pursuant to his letter to Mrs. Tant that he was filing some cases in Atlanta by reason of the situation in Augusta, in which some controversy had arisen respecting the filing of divorce actions there by non-residents. In short, the jury could have concluded from the whole case, that Jones was handling the divorce actions in favor of Kinard and Mrs. Tant, and that on account of the situation existing in Augusta, in which the filing of divorce suits on behalf of non-residents was being investigated, he filed these cases in Fulton County, and that his action and conduct in filing the cases in Fulton County instead of in Augusta, might well have impressed the jury as strongly corroborative of the testimony of Kinard and Mrs. Tant that they were non-residents of Georgia. The nature and extent of corroboration necessary to prove the perjury must in each case be determined by the jury. *Bell* v. *State, 5 Ga. App.,* supra. The jury were authorized to find that the wilful falsity of the testimony given by Kinard and Mrs. Tant was established in each case by the testimony of the person suborned and corroborating circumstances. Indeed, counsel for the defendant seems to concede proof of perjury on the part of Kinard and Mrs. Tant by stating in his brief, "we can perhaps simplify the issue by stating that the appellant at the trial did not contend that these parties did not commit perjury." He did contend that the perjury committed by them was not procured by him. More particularly, the appellant contended, "that parties who come into Georgia with the intent of committing perjury, and who themselves initiate the proceedings for the accomplishments of their own ends by the use of any means necessary can not be procured to commit perjury, for they have already the determination to do this without the intervention of an outsider. Under such circumstances an outsider might aid or assist them, but he could not procure them to testify falsely. Under the evidence in the instant case, Kinard and Mrs. Tant initiated these moves to secure divorces from their respective wife and husband. Before the alleged acts of procurement took place at the Atlantan Hotel, in Atlanta, Georgia, on the night of July 9, 1941, both had determined to obtain the desired results by any means necessary, and both realized and understood that perjury was included within these means." Kinard testified that the first time that he ever saw the defendant was in the defendant's office about four months before the trial, where he told the defend-

ant that he wanted to get a divorce, and that he was living at St. Matthews, South Carolina; that he showed Jones his separation papers that he had in South Carolina; that when he told Jones that he lived in South Carolina, Jones said that Kinard would have to spend as many week-ends in Augusta as he could; that he would file his suit for divorce right away; that there were no divorce laws in South Carolina; that Kinard had obtained a divorce in Florida, and that it had been set aside; that he did not tell Jones why it had been set aside; that he did not know exactly why. Kinard testified further: "When I told him [Jones] that I had had a divorce set aside in Florida, he told me that he would get me one in Georgia that would stick. He did not say where he was going to file my petition, but I took for granted that it would be in Augusta, Georgia. I saw him several times after that. He sent me a letter telling me when to come to Augusta, that my case was coming up in Atlanta. I thought that he had the wrong person. I called him up over the telephone, and told him my case would come up in Augusta, and he must have me mixed up, and he told me: 'No, your case is going to be in Atlanta.' As to whether he told me why it was going to be in Atlanta then, or at any other time, he said something about they were getting mighty strict there in Augusta about divorces for people that did not live there. The defendant never wrote me any place except South Carolina, and I never wrote him from any place except South Carolina." The jury were further authorized to find that the day before the trial of the divorce cases, Kinard, Mrs. Tant, and the defendant met in Augusta; that they went to Atlanta in the defendant's car; that at the defendant's suggestion they went to the Atlantan Hotel; that all of them stopped there the night before the trials; that they all had rooms on the same floor of this hotel; that, according to Kinard and Mrs. Tant, the defendant told them to come by his room, as he wanted to give them instructions about what to say and how to act at the trials the next day; that they both went to the defendant's room, and he instructed them what to swear during the course of the trials, one of the instructions being that they would swear that they had resided in Georgia twelve months before the filing of their suits; that he gave them other cautionary instructions to prevent the court from ascertaining the falsity of their answers, if the court should question them. The defendant denied all of this, except

that they came to Atlanta together and stopped at the same hotel. The jury were also authorized to find that even if Mrs. Tant and Kinard would have been willing to commit the act of perjury in order to get divorces, they did not know what acts of perjury were necessary to get the divorces, or if they did know, they had not decided to commit the particular act or acts of perjury charged in the indictment until the defendant brought their wills to the decision he desired by improper influence exerted upon them. While short of compulsion, yet it amounted to a procuring of perjury within the meaning of the statute defining subornation of perjury. The improper influence was promising or advising them that he would get the divorce if they would swear falsely as to their residence, which, under the circumstances, incited them to swear falsely in order that the defendant might proceed to get them divorces. When they met in a hotel in Atlanta the night before the trial, and the defendant proceeded, not only to give them particular instructions as to what and how they should swear falsely as to their residence, but also instructed them how they might prevent the judge from discovering the falsity of their answers if he should question them relative thereto, even though it entailed further false swearing, he was not merely passively permitting an act of perjury, but he was bringing it about and causing a false oath to be taken, and knew at the time that the false oath was taken wilfully, knowingly, and absolutely. The evidence authorized the verdict.

■ Special ground 10 complains of the refusal to give a written request to charge that Mrs. Tant had testified in the case on trial that she swore knowingly falsely in her divorce case at the defendant's procurement; that if a witness swear wilfully and knowingly falsely his testimony should be disregarded entirely unless corroborated; that "if you believe the admission of Mrs. Tant that she did in her divorce suit swear wilfully and knowingly falsely, then all of her evidence . . should be disregarded by you as unworthy of belief, unless you believe such evidence has been corroborated by circumstances, or other evidence in the case that has been unimpeached." The court did not err in refusing to give the requested instructions. They did not state correct principles of law, in that: (1) The jury would have been instructed, in effect, that they were required to find that, as a matter of law, Mrs. Tant and Kinard were successfully impeached, if it appeared that they had sworn

falsely at their divorce trials, and that the jury were required thereby to disbelieve them unless their testimony was corroborated; the true law being, on the contrary, that it is always for the jury to say when a witness has been successfully impeached; and the court could not correctly instruct the jury that the previous false swearing of these witnesses required the jury to find them so impeached. (2) The requested instructions seek to make the false swearing of a witness on another trial (the divorce trial) of like effect for impeachment as the false swearing of such witness on the trial of the case in which the witness is sought to be impeached (the trial of defendant, Jones); when the true law is to the contrary, that is, that the principle set out in. the Code, § 38-1806, that "if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely unless corroborated by circumstances or other unimpeached evidence," applies only to such false swearing upon the trial of the same case (*Smaha* v. *George,* 195 *Ga.* 412, 418, 24 S. E. 2d, 385), and not to such false swearing upon the trial of some other case, for "the fact that the person was **suborned to commit** the offense of perjury is sufficiently shown by the testimony of the suborned witness." *Bell* v. *State,* supra.

■ Special ground 11 which complains of the refusal of a written request to charge similarly as to the witness Kinard, is controlled by the rule of law stated in the preceding division of this opinion.

■ Special ground 1. Under the rule stated in the Code, § 38-1806, "if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely unless corroborated by circumstances or other unimpeached evidence." In *Smaha* v. *George,* supra, the Supreme Court stated: "It has several times been held, that if a witness swears at the trial to a certain state of facts in a material matter, and he has previously sworn to the contrary in the *same case,* and where he admits that his testimony was false, this constitutes a wilful and knowingly false swearing, and requires the jury to reject his testimony entirely, unless it be 'corroborated by circumstances or other unimpeached evidence.' In such a case it has been held that the judge should so charge the jury, even without a request." (Italics ours.) While, in the instant case, the witness admitted that he had wilfully and knowingly sworn falsely, contrary to what he had sworn in another case, and admitted that

his testimony in the other case was false, the rule stated in § 38-1806, is not applicable, for the contrary statements were not sworn to in the same case, but in a different case. Because the judge charged on the mode of impeaching a witness "by contradictory statements previously made by him as to matters relevant to his testimony and to the case;" it is not reversible error, in the absence of a request, for him to fail to charge another and a different mode of impeaching a witness as provided in § 38-1806, and first-above quoted. *Smaha* v. *George,* supra.

■ Special ground 6. It is complained that the court erred in failing, without request, to charge the jury, "that if they should find that a witness had knowingly and wilfully sworn falsely as to a material matter in the case, that then the jury ought to disregard the testimony of such witness altogether unless corroborated." No request was presented, and what has been said in the preceding division is applicable here. In view of the general charge this ground discloses no error.

■ In special ground 3 it is contended that the court limited its instructions on impeachment to impeachment by contradictory statements, and that this was error because "it was a contention and issue in said case that Mrs. Tant and Kinard were unworthy of belief, and were impeached as witnesses in view of their utter disrespect for their oath." These contentions are without merit. The court did not limit its instructions on impeachment to impeachment by contradictory statements. On the contrary, the court charged that the jury were the sole judges of the credibility of the witnesses, and referred to the manner and deportment of the witnesses, their interest, bias, opportunity to know the facts, personal credibility, etc., as well as to contradictory statements previously made in a different case. The jury were told that they might use their "judgment and common sense" in determining the credibility of the witnesses; and finally were instructed "that if and when a witness has been shown to be utterly and absolutely unworthy of belief or credit, such witness or witnesses should not be believed." The issue referred to in this ground by the defendant, that is, "that Mrs. Tant and Kinard were unworthy of belief . . in view of their utter disrespect for their oath," was embraced in the charge given, particularly in that part stating, "where a witness has been shown to be utterly and absolutely unworthy of belief or credit, such

witness or witnesses should not be believed;" and in that part relating to personal credibility.

■ Special ground 4. An excerpt from the charge relating to impeachment is here excepted to, because the excerpt, in connection with the subject-matter of impeachment by proof of contradictory statements, states: "And the law is that you may believe either the witness or witnesses sought to be impeached, or disbelieve such witnesses; and the law is that if and when there are witnesses introduced for the purpose of impeaching a witness also introduced you may believe such witness or witnesses introduced for the purpose of impeachment, or you may believe the witness sought to be impeached." The complaint is, that no witnesses were introduced for the purpose of impeachment. It is true that no witness was put on the stand with the announcement that the witness was introduced for the purpose of impeaching Kinard and Mrs. Tant. But Judge Etheridge and Bush testified as to contradictory statements made by Kinard and Mrs. Tant, and were cross-examined at length in that connection, the defendant developing from the testimony of Judge Etheridge that Mrs. Tant testified on her divorce trial contrary to what she testified on the trial of Jones, "without batting an eye." No doubt Judge Etheridge and Mr. Bush were offered to prove a part of the State's case; but the defendant was entitled to the benefit of their testimony if it helped him to make successful his attack upon the veracity of Kinard and Mrs. Tant, upon which attack his defense depended. The defendant could claim that Kinard and Mrs. Tant were impeached by the testimony of Etheridge and Bush just as well as (and perhaps better than) by the testimony of witnesses "introduced by himself." Thus we see that the court was substantially correct in stating, "if and when there are witnesses introduced for the purpose of impeaching a witness." The court did not state positively that such witnesses had been introduced. Any inaptness in the use of the word "introduced" is wholly immaterial and without prejudice to the defendant. *Helms* v. *State,* 136 *Ga.* 799 (3) (72 S. E. 246); *Weaver* v. *State,* 67 *Ga. App.* 692 (2-b) (21 S. E. 2d, 542); *Southern Railway Co.* v. *O'Bryan,* 119 *Ga.* 147, 150 (2) (45 S. E. 1000); *Varner* v. *State,* 139 *Ga.* 613 (4) (77 S. E. 808); *Geer* v. *State,* 184 *Ga.* 805 (2) (193 S. E. 776); *Biggers* v. *State,* 171 *Ga.* 596 (3), 599 (156 S. E. 201); *Gate City Dairy & Ice Cream Co.* v.

*McRae*, 164 *Ga.* 810 (3) (139 S. E. 542); *Blackwell* v. *Houston County*, 168 *Ga.* 248 (3) (147 S. E. 574).

■ Special ground 5 excepts to a part of the charge excepted to in special ground 4. The exception that no impeaching witnesses were "introduced" is without merit for the reasons stated in connection with ground 4, discussed in division 7 of this opinion. The exception that the charge limited the jury's right to impeach to the subject of contradictory statements is without merit, for the charge clearly did not so limit the jury, as shown in connection with ground 3, discussed in division 6 of this opinion. The exception that the evidence demanded a finding that Kinard and Mrs. Tant were impeached is without merit, for the credibility of witnesses is for the jury. *Edwards* v. *State, 55 Ga. App.* 187 (5) (189 S. E. 678).

■ Special ground 21 contends that the court erred in charging the jury as follows: "Now, while it is for you to determine the credit, if any, to be given a witness sought to be impeached, still the law is that if and where a witness has been shown to be utterly and absolutely unworthy of belief or credit, such witnesses should not be believed, and it would become your duty to disregard entirely the testimony of such witnesses, that is impeached witnesses, unless the witness sought to be impeached has been corroborated, *or is corroborated by facts and circumstances established in the case by other witnesses or documents,* but here again it becomes a question for your consideration and determination as to whether or not the witness has or has not been corroborated." (Italics ours.) The exception is that the charge does not state that the corroboration must be by circumstances, or by unimpeached evidence. The charge here was referring to the mode of impeaching a witness under the rule stated in the Code, § 38-1803, to wit: "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case." The only mode of impeachment given in charge was this rule. This charge seems to instruct the jury as to what they should do if they determined that the witness had been successfully impeached by the legal method stated in § 38-1803. If the judge had used the language, "it would become your duty to disregard entirely the testimony of such witnesses, that is, impeached witnesses, unless the witnesses sought to be impeached have been corroborated," and had

omitted the words, "or is corroborated by facts and circumstances established in the case by other witnesses or documents," it would have been in conformity with the charge in *Long* v. *State,* 127 *Ga.* 350 (56 S. E. 444) ; *Arnold* v. *State,* 131 *Ga.* 494, 497 (5) (62 S. E. 806) ; *Aycock* v. *State,* 188 *Ga.* 550 (4 S. E. 2d, 221). Merely because the judge charged that it was the duty of the jury to disregard the entire testimony if they determined that the witness had been successfully impeached, unless corroborated, and added thereto the words, "or is corroborated by facts and circumstances established in the case by other witnesses or documents," is not here reversible error. *Waycaster* v. *State,* 136 *Ga.* 95 (70 S. E. 883). The section of the Code with reference to which the judge was charging the jury, nowhere uses the word "unimpeached," nor does the statute on perjury, which says there must be two witnesses, use the words "unimpeached witnesses," and while the rule stated in § 38-1806, quoted above, does use the words "unimpeached evidence," the judge was not here charging with reference to this latter section. Indeed, in the absence of a written request, the judge was not required to charge the rule stated in § 38-1806 as to the particular mode of impeachment. We do not think the exception in this ground discloses reversible error.

■ ▪ Special ground 12. The evidence embodied in the request to charge was evidence delivered on a different trial, to wit, the divorce trial, and the request to charge argued, or stated, in effect, that if the evidence on the present trial, to wit, subornation of perjury, was contradictory to that on the divorce trial, the rule in the Code, § 38-1806, should apply, and that the judge should instruct the jury that they should disregard all of the testimony of the suborned witness; but we think the evidence stated in the request, being a statement sworn to on the trial of the divorce case, which was contradicted by a statement sworn to in the trial of the instant case of subornation of perjury, is a contradictory previous statement, and, even though the statement was sworn to in a different case, it would come under the rule stated in § 38-1803, to wit: "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case," and not under the rule in § 38-1806, to wit: "If a witness shall swear wilfully and falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached

444

evidence;" for under the latter rule, the contradictory statements must all be in the same case, while under the former rule, the contradictory statements need not be made in the same case.

■ In special ground 2, the contentions of the defendant that the court erred in failing to give to the jury prudential instructions with respect to the testimony of Mrs. Tant and Kinard, and to instruct them that they should scan the evidence of Kinard and Mrs. Tant with care, are without merit. The court did give the rules of law relative to the impeachment of witnesses, and that certain aspects of the crime charged were required to be proved by two witnesses, or one witness and corroborating circumstances. These were in the nature of prudential instructions. See, in this connection, *Calvin* v. *State,* 118 *Ga.* 73 (44 S. E. 848) ; *Rouse* v. *State,* 135 *Ga.* 227 (1-a) (69 S. E. 180) ; *Lynn* v. *State,* 140 *Ga.* 387 (79 S. E. 29).

■ Special grounds 7, 8, and 9. In ground 7, an excerpt from the charge is excepted to on the ground that the jury were instructed that the element of procurement in the crime might be shown by Mrs. Tant and Kinard without corroboration, if the jury believed those witnesses. Grounds 8 and 9, as stated in the defendant's brief, "assign error for similar reasons as to specified portions of the similar charge." These grounds disclose no error, for it is the law that the element of procurement may be proved by the sole testimony of the person suborned. *Bell* v. *State,* supra. It is further urged that these instructions were error because certain other instructions were not given in connection therewith. This complaint is without merit under the rule that a correct charge is not erroneous for want of further instructions. *Sherrer* v. *Holliday,* 165 *Ga.* 413 (2) (141 S. E. 67) ; *Scott* v. *Wimberly,* 188 *Ga.* 148 (3 S. E. 2d, 171).

■ Special grounds 13, 14, 15, and 16. Grounds 13 and 15 complain of the failure to charge a written request that even if Kinard committed perjury as claimed, the defendant would not be guilty, unless he procured the perjury. Grounds 14 and 16 complain of a similar failure to charge a written request as to Mrs. Tant. The court covered these matters fully in his general charge, and the failure to give the instructions in the exact wording of the request is not error. *Wilson* v. *State,* 176 *Ga.* 198 (3) (167 S. E. 111).

■ Special ground 19. The State's witness, Beeman, testified as to the defendant's handwriting. On cross-examination, he testified that the defendant's character was good. Then the State's counsel, in order to test the knowledge of the witness concerning the defendant's character, asked the witness if he had not heard that the defendant several years ago murdered a man in South Carolina; the witness replied that he had heard that the defendant killed somebody several years ago, but did not know the circumstances. This question and answer form the exception in ground 19. The court did not err in permitting the State to test the knowledge of the witness as to the matter which he professed to have knowledge, to wit, the defendant's general reputation. "Where a witness called by the defendant testifies to his good character from general reputation, it is allowable, on cross-examination, for the witness to testify to his having heard of specific instances of conduct tending to disprove the witness's estimate of the defendant's character." *Baldwin* v. *State,* 138 *Ga.* 349 (2) (75 S. E. 324); *Dotson* v. *State,* 136 *Ga.* 243 (2) (71 S. E. 164); *Ozburn* v. *State,* 87 *Ga.* 173, 180 (4) (13 S. E. 247); *Mimbs* v. *State,* 189 *Ga.* 189, 192 (2) (5 S. E. 2d, 770). But the defendant says his character for violence was not in issue. The evidence of Mr. Beeman does not support this contention. He testified as to the defendant's general character. The defendant put his general character in issue, not merely one specific trait. He could not have put in issue a single trait of character only. "If the defendant relies on good character, it must be general good character. He can not offer it for attack on one ground alone." *Davis* v. *State,* 60 *Ga. App.* 772 (5 S. E. 2d, 89).

■ Special ground 20. The defendant excepts to the refusal of the court to permit him to prove that when a person comes to a lawyer to state his case, the universal practice is for the lawyer to accept the statement of the client without requiring proof other than the client's own testimony. The proffered testimony was immaterial. No question of legal practice was involved. The issue was not what proof does a lawyer require of a prospective client as to the justice of his cause, but whether or not the defendant wilfully, knowingly, and wickedly procured Mrs. Tant and Kinard to commit perjury. The fact that the defendant was a lawyer, or the general practice of lawyers to accept their client's statements as

true, would not clothe the defendant with the right to suggest, counsel, aid, and procure corrupt perjury.

*Judgment affirmed.* *Broyles, C. J., and Gardner, J., concur.*

ON REHEARING.

In the absence of a proper written request, the trial judge is not required to charge the jury on the subject of credibility of witnesses, or on the subject of impeachment of witnesses. *Childs* v. *Ponder,* 117 *Ga.* 553 (4) (43 S. E. 986) ; *Phillips* v. *State,* 121 *Ga.* 358 (49 S. E. 290). When he charges upon a given subject he should charge correctly and fully thereon, and relatively to the subject of impeachment of witnesses, this requirement is complied with when the general, fundamental, underlying rule of impeachment is charged, that is, "a witness whose unworthiness of credit is absolutely established in the mind of the jury is impeached and ought not to be believed unless corroborated." *Smith* v. *State,* 109 *Ga.* 479 (2) (35 S. E. 59). If instructions upon the particular methods or modes of impeachment are desired they must be requested, or else their omission will not be reversible error *(Millen & Southwestern R. Co.* v. *Allen,* 130 *Ga.* 656 (5), supra) ; for the general, fundamental, underlying rule of impeachment just stated reaches the ultimate fact of impeachment sought by any attempt to impeach, and the methods or modes of impeachment are merely evidentiary routes by which the ultimate fact is sought to be established; and "in the absence of a request so to do, the failure of the judge in charging the jury to apply a rule of evidence to the testimony of a particular witness is not cause for a new trial" *(Holmes* v. *State,* 131 *Ga.* 806, 63 S. E. 347) ; and "the trial court [is] not under necessity of taking up various phases of the evidence and submitting them to the jury" *(Fouts* v. *State,* 175 *Ga.* 71 (6) (165 S. E. 78) ; *Yopp* v. *State,* 175 *Ga.* 314 (165 S. E. 29) ; and elaborations of general principles must always be requested. *Alabama Great Southern R. Co.* v. *Brown,* 138 *Ga.* 328, 332 (6) (75 S. E. 330). Even when the trial judge, after charging the general, fundamental, underlying rule just stated, goes further and charges correctly upon one or more modes or methods of impeachment, his failure to charge also upon another mode or method raised by the evidence, is not reversible error, in the absence of proper request, for "mere failure to charge as to one method of impeachment does not in any wise invalidate a correct charge as

to another and different method of impeachment." *Smaha* · v. *George,* 195 *Ga.* 412 (supra).

To the foregoing rule there is the single exception embraced in the Code, § 38-1806: "If a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." But before this rule of total rejection is applicable, the false swearing must be made in the case on trial, and not upon the trial of some other case, no matter how closely related; it must be wilfully and knowingly false; the witness must admit that he wilfully and knowingly swore falsely, or the nature and character of his own testimony must be such as to render the purpose to falsify "plainly manifest" (*Smaha* v. *George,* supra) ; and also, the false testimony may relate to a matter which is merely "collateral" to the main issue, although it must be relevant and incidentally material thereto. *Fishel* v. *Lockard,* 52 *Ga.* 632 (4) ; *Day* v. *Crawford,* 13 *Ga.* 508 (4).

Ground 3 of the motion for rehearing is the only ground which raises issues under the Code, § 38-1806. This ground invokes special ground 6 of the motion for new trial, and contends that "Kinard and Mrs. Tant . . wilfully and knowingly swore falsely as to material matters in the instant case," and that the trial court should have charged, without request, as stated in that ground of the motion for new trial. The evidence to which this ground for rehearing relates refers to a meeting between Kinard and Mrs. Tant in which they discussed the case of Jones. The brief of evidence refutes the contention that either Kinard or Mrs. Tant swore wilfully and knowingly falsely in this connection. Mrs. Tant testified in this regard that she had talked to Mr. Presley of the solicitor-general's office about Jones's case, and had written him about it, and, "I have not written anybody else about the case. I dropped Mr. Kinard a card once, but it was not about the case. As to how many times I have seen Mr. Kinard from the day of July 10, the date of this verdict, until today—I saw him once before we came over here the first time, and then he came back the day we came over here, then I saw him once before we came for the grand jury, and I saw him on the train coming down. I saw him on the Seaboard train. I came on the train, and he caught the same train I did. I do not know the date, but it was when we were to meet

before the grand jury. I did not know he was going to be on the same train. I don't guess he knew I was going to be on the same train, but he could come at the same time, and come on the same train if he wanted to. I got on the Seaboard at Orangeburg. I think it was the Seaboard. If it was not the Seaboard, it was the Coast Line. Then I got on the Coast Line. I got on whichever one comes through Orangeburg. Mr. Kinard got on the same train at Orangeburg. He got on first and when I got on, I saw him getting on." The testimony speaks for itself. There is absolutely nothing in it which shows that anything which Mrs. Tant swore was wilfully and knowingly false in any way. Kinard testified that he had talked to Presley, and that he had testified before the grand jury, and that "I have not talked to anyone else. I have employed an attorney—I don't know just what case you are talking about. I have not talked with Mrs. Tant about these cases at all. As to whether I talked to her when we were together on the train from Orangeburg, South Carolina, to Atlanta, about the case—I made arrangements with her, I went over to see her and to find out if she was coming and how she was coming. Then I came here on the same train with her. Something was said about the case. I do not know what was said about the case. About all I talked about was the trouble I was in. I have not talked with her about this case since I have been here this time. I went to see Mrs. Tant to make arrangements to find out when she was coming over here on this trip. I thought she was coming through the country, and I could bring her down here, and save us a little money. I saw her and made the arrangements, and we did come together on the same train. I had made the arrangements previous to that. She told me what train she was coming on. It was not exactly an accident that we caught the same train. As to whether it was an arrangement—that was about the only train we could come on from up there in that section. We came on the same train. As to whether we arranged to come on the same train—well, there was not but one train to come on." Q. "You said you went to see her to find out when she was coming, and made arrangements, and came together, that is true, isn't it?" A. "We can come on the same train because"—Q. "You made arrangements to come on the same train?" A. "Not exactly." This testimony in no way bears the mark of wilful and knowing false swearing. While there is some differ-

ence in phraseology in that Kinard said he had "not talked with Mrs. Tant about these cases at all," and then said that on the train, "something was said about the case. I don't know what was said about the case. About all I talked about was the trouble I was in." It is manifest that the witness was doing his utmost to deny that he had "talked about the case," that while "something" was said (by someone) about the case he had not "talked" about it.

If this testimony shows perjury, then not one witness out of a hundred, being belabored by a skillful cross-examiner, could claim not to have perjured himself. It is clear that no such wilful and knowing false-swearing appears here as is contemplated by the Code, § 38-1806. But if Kinard's testimony did appear such as to render the purpose to falsify "plainly manifest," the result would be the same. For his testimony related only to a collateral matter. The gist of the case was whether Kinard and Mrs. Tant perjured themselves on their divorce trials, and if so, whether Jones procured them to do so. These were the primary material facts in issue. All other matters, though material in the sense that they were relevant, were nevertheless collateral. If the jury believed the testimony of Kinard and Mrs. Tant as to their perjury on the divorce trials, and believed that their testimony was sufficiently corroborated, and believed their testimony that Jones procured them to commit these perjuries, then the jury had the right to convict Jones, even though they believed that Kinard and Mrs. Tant had sworn falsely on the trial about not having previously discussed the case. Webster's New International Dictionary (2d ed.) defines "collateral" in part as follows: " (b) related to, but not strictly a part of the main thing or matter under consideration; as, collateral issues. (c) Tending to support the main result; as collateral evidence." "Collateral facts are those which are not directly involved or connected with the principal issue or matter in dispute . . facts which yet have sufficient bearing on the case to be admitted under the rules of evidence . . (but which are) incidental . . (and) not directly involved." *Summerour* v. *Felker*, 102 *Ga.* 254, 257 (29 S. E. 448). As stated, ground 3 of the motion for rehearing is the only ground invoking the Code, § 38-1806, and the above testimony is the only testimony claimed to require a charge, without request, upon the principle of that section. However, in ground 2 of the motion for rehearing, certain other

alleged testimony is incidentally referred to as showing wilful and knowing false-swearing by Kinard and Mrs. Tant on the trial of Jones. We will now refer to that testimony and show that it did not authorize a charge on said section. In the motion it is stated: "Kinard swore that he thought Jones was to originally bring his case in Augusta rather than in Atlanta, although the divorce petition and its verification, which was signed by Kinard, shows that a Fulton County divorce was originally contemplated." Kinard's testimony shows that he understood all along that his case was to be brought in Augusta, and when he learned otherwise thought Jones had confused him with another client. There is no inconsistency about this in any of Kinard's testimony. And that Kinard's understanding was correct is shown by Jones's letters to Mrs. Tant. If there be any inconsistency between Kinard's testimony as to his understanding, and the petition for divorce and its verification, such would not authorize a charge on section 38-1806, for such inconsistency would not arise out of Kinard's own testimony alone, and before said section is applicable the false swearing must be apparent from the testimony of the witness himself. Further, this relates only to a collateral matter. The gist of the perjury and Jones's subornation is the matter of residence in Georgia; and whether the case was to be brought in Augusta or Atlanta would be merely incidental.

In the motion for rehearing it is stated: "Although he (Kinard) finally admits that his evidence in the Florida trial was false and he knew it to be false, when the issue was first presented to him on cross-examination, he took the position that he thought it was true at the time. Although it is evident that his Florida proceeding was fraudulent, and that he knew it was based on false and perjured evidence, on the trial of the instant case he first contended that the judgment secured in Florida was set aside for false testimony by his wife and her lawyer." We cannot agree to the defendant's construction of Kinard's testimony as to the Florida divorce. His testimony as to that on the trial of Jones is perfectly consistent in and of itself. As to whether or not he swore falsely in Florida he testified: "I went before a notary named Mrs. Frances M. Hale in Florida on the 5th of June, 1940, and swore that I was an actual bona fide resident of Jacksonville, Duval County, Florida. The lawyer said that is what it would take to establish my resi-

dence. According to what the lawyer told me, I did not swear falsely. I do not know whether I swore falsely or not when I swore to: that. On June 5, 1940, I was paying rent on a room in Jacksonville, Duval County, and I do. not know whether I was an actual bona fide resident of Jacksonville, Duval County, or not. If paying rent on a room down there established my residence, I was correct in the statement that I had been an actual bona fide resident of Jacksonville, Duval County, for more than ninety days. I·don't know whether renting a room down there and paying a room rent legally established my residence there or not. They asked me did I come there with the intention of residing permanently and I answered, 'yes.' That was false. As to whether I knew it was false when I swore it—I did what the lawyer told me to do." Kinard did not deny that he swore falsely in Florida, he merely said that he swore what his lawyer told him was necessary to swear, and that as to "residence," if what his lawyer told him was meant by "residence" were true, he did not swear falsely in that particular; that he (Kinard) did not know whether paying room rent established a Florida "residence" or not. Kinard did not swear that the Florida divorce was set aside because of false testimony delivered by his wife and her lawyer. On the contrary he testified it was set aside at their instance by. reason of his own false testimony. This is the only possible construction of the following testimony of Kinard as to this matter: "On the 29th of August my wife found out about it, and went down to Judge Gray and told him, and he set my divorce aside and so notified me and my lawyer; he set it aside on false testimony too. I know when my wife found it out she went to Jacksonville, and it was set aside for false testimony, on the part of her and the lawyer that carried her down there." If it should be said, however, that Kinard's testimony on the trial of Jones as to the Florida divorce were wilfully and knowingly false on its face, § 38-1806 would nevertheless be inapplicable. For his testimony related, not to the direct and primary material fact as to the guilt of Jones, but merely to a collateral matter.

. We also call attention to the fact that special ground 6 shows no reversible error, irrespective of the foregoing, because the charge which it is there stated should have been given is not perfect in that it is not clear whether it refers to false swearing in the. case on trial or in some other case.

Ground 10 of the motion for rehearing also refers incidentally to the alleged false swearing on the trial of Jones by Mrs. Tant and Kinard with reference to their alleged discussion of Jones's case. From what has been said it appears that this contention is without merit, for there was no false swearing in that connection. This ground of the motion for rehearing assigns error on special grounds 7, 8, and 9 of the motion for new trial, which assign error upon the court's charge on procurement. These grounds are without merit for the reasons stated in division 12 of our opinion.

Ground 2 of the motion for rehearing assigns error on special ground 1 complaining of a failure to charge without request that witnesses might be found to be impeached if they wilfully and knowingly swore falsely in judicial proceedings. This special ground is dealt with in division 4 of the opinion. The motion for rehearing states: "This assignment of error was not based upon the provision of Code, § 38-1806, which refers to instances where the witness swears wilfully and knowingly falsely in the case on trial." This being true, there is no merit in this ground. For there was no request to charge as contended, and the court gave in charge the general, fundamental, underlying rule of impeachment, which was correct in itself and not rendered incorrect for failure to charge as to a particular mode or manner of impeachment; nor did the correct charge upon one mode (contradictory statements) make it reversible error for the court to fail to charge, without request, on other modes presented by the evidence.

The contention of ground 4 of the motion for rehearing is that the testimony of Judge Etheridge and Bush is not sufficient to show contradictory statements. This is untenable as shown in division 7 of the opinion. But if this contention were correct, the result would be the same, as Kinard and Mrs. Tant themselves testified as to their previous contradictory statements.

Ground 5 contends that the opinion is inconsistent in that in division 6 of the opinion it is ruled that the trial court did not limit his instructions on impeachment to impeachment by contradictory statements, while in division 9 of the opinion it is said that "the only mode of impeachment given in charge was the rule stated in the Code, § 38-1803." The opinion, rightly construed, is not inconsistent as claimed. Both statements are correct. The court did not limit its instructions on impeachment to impeachment by

contradictory statements, but also charged the general, fundamental, underlying rule of impeachment, and also charged the rules relating to the credibility of witnesses. But the only specific mode of impeachment, given as such in the Code, aside from the rules relating to the credibility of witnesses, as to which the trial court charged, was the mode relative to impeachment by contradictory statements. And this, of course, is the sense and meaning of the word "mode" as used in division 9 of the opinion.

The first contention of ground 6 of the motion for rehearing is that the evidence authorized the jury to find that Mrs. Tant and Kinard had a general disregard for the sanctity of an oath, and that without request the court should have charged the jury that "if they found a witness unworthy of belief, the testimony of the witness must be disregarded unless corroborated by evidence coming from an unimpeached source." This contention is without merit. It was not reversible error to fail, without request, to charge as to this particular mode or method of impeachment. *Millen & Southwestern R. Co. v. Allen,* supra; *Hood v. State,* 67 *Ga. App.* 291 (2) (19 S. E. 2d, 927); *Wheelright v. Aiken,* 92 *Ga.* 394 (2) (17 S. E. 610); *Sanders v. State,* 67 *Ga. App.* 706 (4) (21 S. E. 2d, 276). It is contended that the trial judge should not have omitted the words "corroborated from an unimpeached source." As pointed out in division 9 of the opinion these words are expressly used only in cases coming within the Code, § 38-1806, and this section was inapplicable, and the judge was not charging thereon. Moreover, the words actually used by the trial judge carry implicitly within themselves the idea that the corroboration must come from a source which the jury believes, and that source is necessarily one not successfully impeached. If the jury found both Mrs. Tant and Kinard unworthy of belief, it necessarily followed that they could not use their testimony as a basis for corroborating other evidence; and if they found one unworthy of belief it likewise necessarily followed that they were precluded from using the testimony of such unworthy one as a basis for corroborating the other, or corroborating other evidence in the case.

The second contention here made is that the opinion holds that where a witness is successfully impeached he may be corroborated by other evidence also successfully impeached. There is no such ruling in this case. Division 9 of the opinion can not be so con-

454

strued. All that the opinion holds is that the trial judge was not required to use the express words, "unimpeached source." The opinion merely points out that these words do not themselves expressly appear in the Code, § 38-1803, as to which the judge was charging, nor do they expressly appear in charges approved in cited cases.

In ground 7 it is contended that the opinion is inconsistent in the rulings in divisions 6 and 9. No inconsistency is shown. In division 6 it is pointed out that the issue as to whether Mrs. Tant and Kinard were unworthy of belief because of their general disregard for an oath was embraced in the general, fundamental, underlying rule given as to impeachment, and in the general charge on credibility of witnesses. In division 9 it is pointed out that the part of the charge there excepted to was not error because of the omission of the express words, "unimpeached source." It is not held in division 9 that the charge there excepted to was limited to impeachment by contradictory statements and not otherwise applicable. The court merely points out as one of the reasons why the express words "unimpeached source" were not required to be used is, that these words are not expressly used in the Code, or in cited cases, in connection with one of the modes of impeachment (contradictory statements) as to which the trial court correctly charged.

These and all other matters in the motion for rehearing having been considered, the judgment is adhered to.

*Judgment adhered to.   Broyles, C. J., and Gardner, J., concur.*